1

2

3

4                          UNITED STATES DISTRICT COURT

5                               DISTRICT OF NEVADA

6                                      * * *

7    STEVE LIGUORI, *et al.*,                    )
                                                 )
8                          Plaintiffs,           )        2:11-cv-00492-GMN-CWH
                                                 )
9    vs.                                         )        **ORDER**
                                                 )
10   BERT HANSEN, *et al.*,                      )
                                                 )
11                         Defendants.           )
     _____)

12

13          This matter is before the Court on Plaintiffs' Emergency Motion to Extend Time and

14   Alter Discovery Deadlines Pursuant to FRCP 6 (#21), filed November 1, 2011; Defendant Bert

15   Hansen's Response in Opposition (#22) and Countermotion to Strike (#23), filed November 15,

16   2011; and Plaintiffs' Reply (#26), filed December 2, 2011.  In conjunction with Plaintiffs'

17   emergency motion, the Court will also consider Defendant's Countermotion to Disqualify (#24)

18   and Countermotion to Compel (#25), both filed on November 15, 2011.[1]

                                   **BACKGROUND**

19          On April 1, 2011, Plaintiffs filed their complaint against Defendants Kawana Pohe

20   ("Pohe") and Bert Hansen ("Hansen") alleging (1) breach of contract, (2) breach of the implied

21   covenant of good faith and fair dealing, and (3) copyright infringement. *See* Compl. (#1).  After

22   being served, Defendant Pohe filed a motion to dismiss.  (#8).  On July 8, 2011, Defendant

23   Hansen filed his answer and counterclaim.  (#9).  On August 24, 2011, the Court adopted the

24   parties' proposed discovery plan and scheduling order.  (#17).

25          On September 6, 2011, Defendant Hansen served Plaintiffs, through counsel Ryan

26

27   _____

28          [1] Defendant Hansen's Response (#22), Countermotion to Strike (#23), Countermotion to Disqualify (#24), and Countermotion to Compel (#25) were filed by counsel as one entry in the Court's CM/ECF system.  The Clerk's office alerted counsel of the error and refiled the motions as four separate entries. *See* Notice of Docket Correction (#22).

1    Alexander, with Rule 33 Interrogatories, Rule 34 Requests for Production, and Rule 36

2    Requests for Admissions.  See Exhibits B, C, and D attached to Def.'s Response (#22).

3    Responses were due on or before October 10, 2011.  On approximately October 4, 2011,

4    Plaintiffs' counsel was contacted by attorney Jacob Reynolds of the law firm of Hutchison &

5    Steffen "to discuss Plaintiffs' desire to have Hutchison & Steffen represent them going forward

6    in this case."  See Pls' Mot. (#21) at 2:25-3:1.  Plaintiffs did not timely respond to the

7    discovery requests due to an alleged miscommunication between Mr. Alexander and Mr.

8    Reynolds.

9         On October 13, 2011, three days after responses were due, Defendant Hansen's counsel

10   sent Plaintiffs' counsel Ryan Alexander a letter informing him that the discovery responses

11   remained outstanding.  See Ex. E attached to Def.'s Resp. (#22).  Enclosed with the letter was

12   a copy of Defendant Hansen's notice that the Rule 36 requests for admissions were deemed

13   admitted (#20), which was also filed with the Court on October 13.  On the day the notice was

14   filed, attorney Jacob Reynolds, who had previously contacted Mr. Alexander regarding

15   Plaintiffs' desire to move forward with Hutchison & Steffen as their attorneys, was in the

16   hospital for the birth of his child.  Consequently, the first he heard of the missed deadlines and

17   deemed admissions was Monday, October 17, 2011.[2]

18        After learning of the missed deadlines and deemed admissions, attorney Jacob Reynolds

19   contacted Defendants' counsel via email, facsimile, and regular mail.  He indicated that he and

20   his firm were "only willing to take over the case" if counsel agreed to an extension of

21   discovery and, specifically, of the discovery response deadlines.  See Ex. F attached to Def.'s

22   Resp. (#22).  He further requested that the parties address the issues without court

23   intervention.  Defendant Pohe's counsel, Adam Levine, indicated that Pohe did not object to

24   any extension so long as it did not affect his pending motion to dismiss (#8).[3]

25   _____

26        [2] Mr. Alexander did not respond to defense counsel's October 13 letter because he believed that his
     services had been terminated.  See Decl. of Ryan Alexander at ¶ 7

27        [3] In the body of the motion, Plaintiffs' counsel sets forth the understanding reached with counsel
28   for Defendant Pohe that, essentially, discovery as against Pohe has been automatically stayed based on the
     filing of a motion to dismiss and "there are no current discovery deadlines" that apply to Pohe.  See Pls' Mot.

1    However, Defendant Hansen did not agree to <u>all</u> of the requested extensions.  In a

2    letter, Hansen's counsel stated that the failure to satisfy discovery obligations "is neither my

3    problem nor my concern."  See Ex. G attached to Def.'s Resp. (#22).  He indicated further

4    that he would not agree to the requested extension because counsel did not offer "anything

5    useful in return for the voluntary relinquishment of a position of advantage."  Ex. G.

6    Nevertheless, Hansen's counsel indicated his willingness "to stipulate to enlarge discovery

7    deadlines relative to the Interrogatories and Requests for Production if you [Mr. Reynolds] will

8    agree to stipulate to enlarge the time within which we may file an Amended Counterclaim ...."

9    Ex. G.

10   1.  Plaintiffs' Motion to Extend Time (#21)

11   Shortly after receiving Defendant Hansen's letter, Plaintiffs, through attorney Jacob

12   Reynolds, filed their emergency motion to extend time (#21) requesting a six-month (180 day)

13   extension of all discovery deadlines as measured from the date of the Court's order on their

14   motion.  Citing his conversation with counsel for Defendant Pohe and the letter from

15   Defendant Hansen's counsel (Ex. G attached to Def.'s Resp. (#21)), Plaintiffs assert that the

16   parties agreed to extend the deadline to amend pleadings.  Additionally, Plaintiffs assert that

17   there is good cause to extend all remaining discovery deadlines, including the discovery cutoff

18   date.  Counsel reiterates his claim that, without the extension, his firm would be unable to

19   "substitute into the case." He also asserts that the extension is necessary to ensure a "fair

20   resolution on the merits."

21   Plaintiffs also seek extensions to specific response deadlines related to outstanding

22   discovery requests, including the Rule 36 deemed admissions.  Regarding the Rule 36

23   admissions, Plaintiffs' counsel  argues that the filing of a notice of deemed admissions was

24   improper.  He contends that Hansen's counsel should have met and conferred before filing his

25   "unilateral" notice.  He further argues that because the requests for admissions have now been

26   answered, there would be no prejudice in granting the requested extension.  He concedes the

27

28   (#21) at 2:7-12.

1   failure to respond to the Rule 33 and Rule 34 discovery requests in a timely manner, but

2   assures the Court that answers can be provided within 15 days of an order on this motion.

3   Ultimately, Plaintiffs argue that, despite the missed deadlines, the Federal Rules provide ample

4   room for the requested relief to ensure the case is "tried on the merits" as opposed to

5   determined by resort to "draconian measures."[4]

6   2. Defendant Bert Hansen's Response (#22)

7        Defendant Hansen opposes much of Plaintiffs' motion.  He agrees that extensions of the

8   deadline to file motions to amend and to disclose expert witnesses are appropriate, but he

9   opposes any extension of the discovery cutoff claiming that Plaintiffs have not been diligent in

10  their prior discovery efforts.  Moreover, and contrary to the representation made in his

11  Hansen's counsel's letter to Plaintiffs' counsel (see Ex. G attached to Def.'s Resp. (#22)),

12  Hansen now opposes any extension of the time to respond to the Rule 33 and Rule 34

13  discovery requests that does not include a waiver of all objections due to the failure to timely

14  respond.  See Def.'s Countermotion to Compel (#25).  According to Hansen, neither confusion

15  between attorney Jacob Reynolds and Ryan Alexander nor the need for Mr. Reynolds to be

16  present for the delivery of his child constitutes excusable neglect.

17       Additionally, Hansen opposes Plaintiffs' request to extend the deadline to respond to

18  the Rule 36 deemed admissions arguing that (1) Rule 36 automatically provides for admissions

19  if requests are not responded to in a timely manner and (2) because admissions are automatic if

20  responses are untimely, there is no need for a meet and confer with the party against whom

21  admissions are taken.  According to Hansen, "it is a legal non-sequitur to seek to enlarge the

22  time for responding to the [requests for admissions] without first moving to withdraw the

23  deemed admissions" pursuant to Rule 36(b).  To the extent Plaintiffs' motion can be construed

24  as a motion to withdraw admissions under Rule 36(b), Hansen argues that Plaintiffs have not

25  satisfied their burden to show that the admissions should be withdrawn.  He argues that while

26  Plaintiffs have paid "lip service to the general policy consideration favoring resolution of the

27

28      [4] Plaintiffs' counsel cites Federal Rules 6, 33, 34, and 36 to support his position.

- 4 -

1    matters on the merits," they have presented nothing specifically articulating why the deemed

2    admissions should be withdrawn.  According to Hansen, this failure mandates denial of

3    Plaintiffs' request to enlarge time for response to the Rule 36 requests for admissions.

4    ///

5    3.  Defendant Hansen's Countermotion to Strike (#23), Countermotion to Disqualify

6    (#24), and Countermotion to Compel (#25)

7        Citing Donovan v. Maine, 2001 WL 179887 (D. Me.), Hansen requests that the Court

8    strike Plaintiffs' motion because the "limited appearance" entered by Plaintiffs' counsel Jacob

9    Reynolds is impermissible in federal court without prior approval.  See Def.'s Countermotion

10    (#23).  He also requests that the Court disqualify Mr. Reynolds and the law firm of Hutchison

11    & Steffen.  See Def.'s Countermotion (#24).  Hansen claims that the attempt to "unbundle"

12    legal services and enter a limited appearance on behalf of Plaintiffs is an ethical violation that

13    warrants disqualification.  Hansen also requests, pursuant to Fed. R. Civ. P. 37, that the Court

14    compel Plaintiffs to respond to the outstanding Rule 33 and Rule 34 discovery requests as well

15    as initial disclosures under Rule 26(a).  See Def.'s Countermotion (#25).

16    5.  Plaintiffs' Reply (#26)

17        In reply, Plaintiffs' counsel Jacob Reynolds reiterates that he and his firm "can only

18    substitute in as counsel, and proceed through trial, if the Court grants the relief requested in

19    this Motion [#21] so that this case can be effectively tried on the merits."  See Pls' Reply (#26)

20    at 1:19-21.  He also describes several "mischaracterizations" in Defendant Hansen's response

21    and various countermotions.  He assures the Court that he has brought the issues "in full

22    candor" so that this case can be determined on its merits rather than through the enforcement

23    of the "draconian punitive measures" sought by Hansen.  Plaintiffs argue that the language of

24    Rules 33, 34, and 36 give the Court discretion to extend the response period apart from

25    analysis under Rule 6.  Plaintiffs' counsel also argues that there is no merit to either the motion

26    to strike (#23) or motion to disqualify (#24), dismissing Hansen's "unbundling" claim while

27    noting that Hutchison & Steffen is not "ghost writing" briefs but, rather, has appeared on

28    behalf of the Plaintiffs in this matter.

DISCUSSION

**1. Defendant Hansen's Countermotion to Strike (#23) and Countermotion to Disqualify (#24)**

Prior to reaching the merits of Plaintiffs' motion (#21), the Court must first address Defendant Hansen's countermmotion to strike (#23) and countermotion to disqualify (#24).

The underlying premise of the motion to strike is Plaintiffs' counsel Jacob Reynolds attempt to limit his appearance and make his substitution contingent on the favorable resolution of Plaintiffs' motion (#21). Citing *Donovan v. Maine*, 2001 WL 179887 (D. Me), Hansen argues that an attorney may not enter a "special or limited" appearance without prior approval from the Court. The facts of *Donovan* are substantially different than those presently before the Court. In *Donovan*, an individual representing himself in a *habeas corpus* matter filed objections to a magistrate judge's report and recommendation to a district judge. At the same time, a lawyer attempted to make a limited appearance and file a "partial" objection to the magistrate's recommendation. Citing 28 U.S.C. § 1654, the court in *Donovan* noted that "individuals have a right to represent themselves and . . . have the right to be represented by a lawyer, but they do not have the right to do both simultaneously." Thus, the *Donovan* court rejected the attempted "hybrid representation."[5]   Unlike *Donovan*, there is no "hybrid representation" here. At all times Plaintiffs have proceeded through counsel and not *pro se*.

Nevertheless, although not a "hybrid representation," the Court is concerned that Plaintiffs' counsel Jacob Reynolds has attempted to make the future filing of a stipulation to substitute contingent on the favorable outcome of Plaintiffs' motion (#21). Contingent substitutions of the type advocated by Mr. Reynolds are not contemplated by the Local Rules governing appearances, substitutions, and withdrawals of attorneys licensed to appear in this district. Local Rule ("LR") IA 10-6 provides that a substitution must be by stipulation and "<u>shall</u>

---

[5] "Hybrid representation" is common in criminal cases where a criminal defendant exercises his Sixth Amendment right to represent himself and standby counsel is appointed. The appointment of standby or advisory counsel to assist a pro se defendant does not infringe on the Sixth Amendment right to self-representation. United States v. Moreland, 622 F.3d 1147, 1155 (9th Cir. 2010) citing McKaskle v. Wiggins, 465 U.S. 168, 176-77 (1984). A defendant does not have a right to advisory counsel. E.g., United States v. Salemo, 81 F.3d 1453, 1460 (9th Cir. 1996).

1   be by leave of Court and <u>shall</u> bear the signatures of the attorneys <u>and of the client</u> represented."

2   LR IA 10-6(c) (emphasis added). The appropriate stipulation for substitution of counsel has not

3   been filed, and Plaintiffs' counsel has cited no authority for the position that an attorney may

4   make the future filing of a substitution contingent on the Court's decision regarding the

5   preliminary extension of deadlines.

6          Even had the appropriate stipulation been filed, "the signature of an attorney to a

7   stipulation to substitute . . . constitutes an express acceptance of all dates then set for pretrial

8   proceedings, for trial or hearing, by the discovery plan, or in any court order" unless specific

9   relief is requested under LR IA 10-6(e).  LR IA 10-6(c).  In turn, LR IA 10-6(e) provides that,

10  except for good cause, "no withdrawal or substitution shall be approved if delay of discovery, the

11  trial or any hearing in the case would result."  If delay would result, the withdrawing or

12  substituting attorney "must request specific relief."  LR IA 10-6(e).  The rules are clear that all

13  substitutions of counsel are contingent on Court approval and are always triggered by a

14  stipulation or motion requesting leave.  In its determination whether to grant leave to substitute

15  or withdraw, the <u>Court</u> considers the effect of the withdrawal or substitution on established

16  deadlines as well as any specific request for relief from deadlines contained within the request for

17  leave.  Consequently, Plaintiffs' counsel insistence on a "contingent" substitution is rejected, and

18  the Court will treat Mr. Reynolds appearance as a general appearance.  As such, there is no basis

19  for countermotion to strike (#23).  Any future attempts at withdrawal must be by leave of court

20  and consistent with the Local Rules.[6]

21         Hansen also filed a countermotion to disqualify Mr. Reynolds and the law firm of

22  Hutchison & Steffen from representing Plaintiffs in this matter. (#24).  Disqualification motions

23  present courts with a delicate and sometimes difficult balancing task.  *Brown v. Eighth Judicial*

24  *Dist. Court ex rel. County of Clark*, 116 Nev. 1200, 14 P.3d 1266, 1269-70 (Nev. 2000).  Close

25  cases are resolved in favor of disqualification.  *Palmer v. Pioneer Inn Assocs.*, 19 F. Supp. 2d

26

27         [6]  This is also true for Plaintiffs' counsel Ryan Alexander.  As of the date of this Order, he remains
28  one of Plaintiffs' counsel of record.  If he wishes to withdraw, he must file the appropriate withdrawal with
    the Court.

1   1157, 1162 (D. Nev. 1998) ("Where disqualification is contemplated, 'any doubt is resolved in

2   favor of disqualification.'" (citing *Faison v. Thornton*, 863 F.Supp. 1204, 1216 (D. Nev. 1993),

3   *overruled on other grounds*, 338 F.3d 981 (9th Cir. 2003)). "Particularly strict judicial scrutiny"

4   is given to a motion to disqualify opposing counsel because there is a significant possibility of

5   abuse for tactical advantage. *Optyl Eyewear Fashion Int'l Corp. v. Sytle Cos., Ltd.*, 760 F.2d

6   1045, 1050 (9th Cir. 1985) (citations ommitted). The moving party bears the burden of

7   establishing an ethical violation or other factual predicate upon which the motion to disqualify

8   depends. *See United States v. Walker River Irr. Dist.*, 2006 WL 618823 (D. Nev.) (citing *Colyer*

9   *v. Smith*, 50 F.Supp.2d 966, 967 (C.D. Cal. 1999). Attorneys admitted to practice before this

10  court must "adhere to the standards of conduct prescribed by the Model Rules of Professional

11  Conduct as adopted and amended from time to time by the Supreme Court of Nevada, except as

12  such may be modified by this court." LR IA 10-7(a).

13      Here, Hansen claims that Jacob Reynolds' attempt to "unbundle" legal services and

14  enter a limited appearance is an ethical violation warranting disqualification. Hansen cites two

15  District of Colorado cases to support his position that "[t]he unbundling of legal services" is

16  prohibited - *Crist v. Mesa Developmental Services*, 2010 WL 3842610 (D. Colo.) and *Jachnik v.*

17  *Wal-Mart Stores, Inc.*, 2007 WL 1216523 (D. Colo.). Both *Crist* and *Jachnik* deal with

18  enforcement of the District of Colorado's Local Rules. Obviously, Colorado's Local Rules have

19  no bearing on matters pending before this Court. The cited cases, however, do address "ghost-

20  writing" pleadings for parties that are proceeding *pro se*. "Ghost-writing" occurs when an

21  attorney drafts pleadings or court filings on behalf of a *pro se* litigant who, in turn, signs them

22  *pro se*. It is an inappropriate practice. *See e.g., Smallwood v. NCsoft Corp.*, 730 F.Supp.2d

23  1213, 1222 (D. Hawaii 2010) citing *Ricotta v. State*, 4 F.Supp. 2d 961, 986 (S.D. Cal. 1998)

24  (citations ommitted); *see also Walker v. Pacific Maritime Assoc.*, 2008 WL 1734757 (N.D. Cal.)

25  (finding that ghost-writing is an inappropriate practice and attorneys who engage in the practice

26  are subject to sanction under Fed. R. Civ. P. 11).

27      "Ghost-writing" is inappropriate for several reasons. First, because the standard practice

28  of federal courts is to interpret *pro se* filings liberally, allowing "ghost-writing" would

1   disadvantage the opposing party. *Ricotta*, 4 F. Supp. 2d at 986. Second, "ghost writing" is a

2   deliberate evasion of responsibilities imposed by Rule 11, which requires attorneys to personally

3   represent that there are grounds to support assertions made in each filing. *Id*. Third, "ghost-

4   writing" implicates the Rules of Professional Responsibility. *Id*. For example, pursuant to the

5   Nevada Rules of Professional Conduct ("NRPC"), "[i]t is professional misconduct for a lawyer

6   to: (c) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." NRPC 8.4.

7   An attorney participating in "ghost-writing" is engaged in conduct involving misrepresentation to

8   the Court because another individual is signing pleadings that the attorney drafted. Moreover,

9   "having a litigant appear to be *pro se* when in truth an attorney is authoring pleadings . . . is far

10  below the level of candor which must be met by members of the bar." *Ricotta*, F. Supp. 2d at

11  986 (citation omitted).

12       Here, Mr. Reynolds is not ghost-writing pleadings on behalf of a *pro se* litigant. The

13  motions are signed by Mr. Reynolds and he has, in fact, made an appearance in the matter.

14  Hansen has not cited any law or rule that prohibits a litigant from retaining multiple attorney in

15  the same matter. In short, Hansen has not met his burden to show that disqualification is

16  warranted. Consequently, the motion to disqualify (#24) will be denied.

17  **3. Plaintiffs' Motion to Extend Time (#21)**

18       By way of their motion to extend, Plaintiffs request the following: (A) an extension of

19  discovery deadlines, (B) an extension of time to respond to Defendant Hansen's Rule 36 requests

20  for admissions, and (C) an extension of time to respond to Defendant Hansen's Rule 33 and Rule

21  34 discovery requests. The Court will address each request in turn.

22       **A. Plaintiffs' request to extend discovery deadlines set forth in the Scheduling**

23  **Order**

24       Plaintiffs filed their motion to extend (#21) on November 1, 2011. At that time, the only

25  discovery deadline which had passed was the October 6, 2011, deadline for motions to amend

26  pleadings and add parties. The expert designation deadline did not expire until November 7,

27  2011. Nevertheless, the Local Rules require that "[a]ll motions . . . to extend a deadline set forth

28  in a discovery plan shall be received by the Court no later than twenty-one (21) days before the

1    expiration of the subject deadline." *See* LR 26-4.  Thus, the deadline to request an extension of

2    expert designation <u>had</u> passed.  Despite the passage of these deadlines, the Court agrees with the

3    parties that these specific deadlines should be extended.

4        Additionally, Plaintiffs have requested a six-month (180-day) extension of all discovery

5    deadlines, claiming the extension is necessary to ensure a "fair resolution on the merits."

6    Hansen opposes the extension arguing that Plaintiffs have not been diligent in their prior

7    discovery efforts.  Importantly, at the time the motion to extend (#21) was filed, over sixty days

8    remained until the discovery cutoff date.  As such, the Court reviews the requested extension of

9    the discovery deadline under the "good cause" standard.

10       Unfortunately, the analysis is significantly hampered by Plaintiffs failure to comply with

11   LR 26-4, which provides that applications to extend any date set by the discovery plan and

12   scheduling order must, in addition to satisfying the requirements of LR 6-1, include:

13       (a) A statement specifying the discovery completed;

14       (b) A specific description of the discovery that remains to be completed;

15       (c) The reasons why the deadline was not satisfied or the remaining discovery was not

16   completed within the time limits set by the discovery plan; and,

17       (d) A proposed schedule for completing all remaining discovery.

18   *See* LR 26-4(a)-(d).

19       Plaintiffs have not addressed any of these required subjects in their motion.  The good

20   cause standard under LR 26-4 is the same as that for modification of the scheduling order under

21   Federal Rule of Civil Procedure 16(b).  As stated in *Johnson v. Mammoth Recreations, Inc.*, 975

22   F.2d 604, 609 (9th Cir. 1992), the good cause standard primarily considers the diligence of the

23   party or parties seeking the extension.  If the party seeking the modification "was not diligent, the

24   inquiry should end" and the motion should not be granted.  *Id*.  "Although the existence or degree

25   of prejudice to the party opposing the modification might supply additional reasons to deny a

26   motion, the focus of the inquiry is upon the moving party's reasons for seeking modification."

27   *Id*.  The Court has broad discretion in supervising the pretrial phase of litigation.  *Zivkovic v.*

28   *Southern California Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002).

1    The general premise of Plaintiffs' request is that it would be unfair and prejudicial to

2   Plaintiffs if the discovery cutoff is not extended.  Other than citing the general preference for

3   deciding cases on the merits, Plaintiffs have made little effort to demonstrate how they have

4   been diligent in discovery.  The preference for deciding cases on the merits does not grant

5   litigants a license to ignore or disregard discovery deadlines.  As stated by the Ninth Circuit:

6       A scheduling order is not a frivolous piece of paper, idly entered, which
        can be cavalierly disregarded by counsel without peril.  The district
7       court's decision to honor the terms of its binding scheduling order does
        not simply exalt procedural technicalities over the merits of [a litigant's]
8       case.  Disregard of the order would undermine the court's ability to
        control its docket, disrupt the agreed-upon course of the litigation, and
9       reward the indolent and cavalier.

10   *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992) (internal quotations

11   and citations omitted).  Merely citing the preference for "deciding cases on the merits" does

12   not satisfy the good cause requirement.

13   Plaintiffs' counsel also asserts that Defendant Pohe's agreement to the extension  is

14   evidence of good cause.  Not so.  That agreement is based on the faulty notion that discovery,

15   as against Pohe, has been automatically stayed based on the filing of a motion to dismiss and that

16   "there are no current discovery deadlines" that apply to Pohe.  *See* Pls' Mot. (#21) at 2:7-12.  The

17   filing of a Rule 12(b)(6) motion does not result in an automatic stay of discovery.  *Tradebay,*

18   *LLC v. eBay, Inc.*, — F.R.D. —, 2011 WL 6182039 (D. Nev.) ("The Federal Rules of Civil

19   Procedure do not provide for automatic or blanket stays of discovery when a potentially

20   dispositive motion is pending.").

21   Plaintiffs also suggest that there is good cause for the extension because this is their first

22   request for an extension and is not made for purposes of delay.  While relevant, the number of

23   prior extensions, standing alone, is hardly sufficient to establish good cause. Certainly, the Court

24   looks at the number of prior extensions in determining whether a requesting party has been

25   diligent in pursuing discovery.  But more than the quantity of requested extensions, the Court

26   looks to the quality and diligence of prior discovery efforts.  It must weigh those efforts against

27   the "what," "why," "when," and "how" of the discovery that remains - which LR 26-4 requires

28   be set forth in any stipulation or motion to extend.  Thus, the failure to provide any of the detail

1  required by LR 26-4 makes it difficult for the Court to conclude that there is good cause for the

2  requested extension.

3       It does appear that Plaintiffs, through counsel, did conduct some informal discovery

4  prior to filing this motion by contacting Defendant Hansen's counsel in an attempt to obtain

5  information for purposes of an audit.  And, although Plaintiffs concede their discovery

6  responses are untimely, they have indicated that the responses have been compiled and can be

7  served immediately.  Additionally, more than 60 days remained until the discovery cutoff date

8  when Plaintiffs' motion (#21) was filed and, in response to the motion, Hansen sought to

9  disqualify Plaintiffs' counsel Jacob Reynolds and the law firm of Hutchison & Steffen.  It is

10  understandable that discovery would halt while the Court addressed the disqualification issue.

11       Thus, in light of the time remaining for discovery when the motion was originally filed as

12  well as Defendant's motion to disqualify, the Court finds that there is good cause to extend the

13  discovery deadline.  However, before the Court will extend the discovery deadlines, it will

14  require Plaintiffs' counsel to personally consult with defense counsel in order to submit a

15  stipulation that complies with the requirements of LR 26-4.

16       **B.  Plaintiffs' request to extend time to respond to Defendant Hansen's Rule 36**

17  **requests for admissions**

18       Much of Plaintiffs' motion is dedicated to the request to extend deadlines to respond to

19  Defendant Hansen's Rule 36 requests for admissions.  Plaintiffs object to Hansen's "notice" to

20  deem the requests admitted claiming that Hansen's counsel should have personally consulted

21  with Plaintiffs' counsel prior to the filing.  Plaintiffs also suggest that the "notice" was

22  inappropriate and that Hansen's counsel should have filed a motion.  Finally, Plaintiffs argue that

23  the Court may extend the time to respond to Rule 36 requests for admissions pursuant to Rule

24  36(a)(3) after the response time has expired.

25       It is undisputed that Plaintiffs did not timely respond to the Rule 36 requests.  Federal

26  Rule of Civil Procedure 36(a)(3) provides:

27       A matter is deemed admitted unless, within 30 days after being served, the
         party to whom the request is directed serves on the requesting party a written

28       answer or objection addressed to the matter and signed by the party or its

attorney.  A shorter or longer time for responding may be stipulated to under Rule 29 or be ordered by the court.

Although Rule 36 requests for admissions are governed by the relevance standards set forth in Rule 26(b), they are not principally discovery devices.  *Liberty Mut. Ins. Group v. Panelized Structures, Inc.*, 2011 WL 6780875 (D. Nev.) (citing *8A Charles Allen Wright, Aruther R. Miller & Richard L. Marcus,* Federal Practice and Procedure Civil § 2252 at 522-525 ("Strictly speaking Rule 36 is not a discovery procedure at all, since it presupposes that the party proceeding under it knows the facts or has the document and merely wishes its opponent to concede their genuineness.  The party who desires to discover what facts are should resort to other discovery rules rather than Rule 36."))  Thus, contrary to Plaintiffs' assertion, there is no need for a party to file notice or a motion in order for Rule 36 requests to be deemed admitted.  By operation of Rule 36, requests for admissions are automatically deemed admitted when a party fails to timely respond.  *See Employer Painters Welfare Trust v. Atlas Drywall & Painting, LLC*, 2011 WL 5041215 (D. Nev.).  As such, there was no need for Defendant Hansen to personally consult or meet and confer regarding the deemed admissions.

Plaintiffs, acknowledging their untimeliness, also request additional time to respond pursuant to Rule 36(a) based on their own excusable neglect.  Rule 36(a) does permit parties to stipulate to "a shorter or longer time for responding" or to have a shorter or longer time "ordered by the court."  However, Rule 36 clearly contemplates that such relief be approved or requested prior to expiration of the response time.  That did not happen here and, therefore, the requests for admissions were automatically deemed admitted.

Once admitted, automatically or otherwise, Rule 36(b) provides that the matter is "conclusively established unless the court, on motion, permits the admission to be withdrawn or amended."  Fed. R. Civ. P. 36(b).  Withdrawal or amendment of a Rule 36 admission "is permissive, not mandatory."  *See Conlon v. United States*, 474 F.3d 616, 622 (9th Cir. 2007) (citation omitted).  "In order to have an admission withdrawn, the moving party need not provide an explanation or excuse for the failure to serve timely responses."  *Carden v. Chenega Security & Protections Services, LLC*, 2011 WL 1344557 (E.D. Cal.).  Rather, the court's discretion is

1  exercised "in terms of the affect upon the litigation and prejudice to the resisting party." *Id*.

2  (citation omitted).

3       Relief from a deemed admission is appropriate only when (1) presentation of the merits

4  of the action would be subserved and (2) the party who obtained the admission would not be

5  prejudiced by the withdrawal. *Conlon*, 474 F.3d at 622 (citation omitted). "The party who

6  obtained the admission has the burden of proving that allowing withdrawal of the admission

7  would prejudice its case." *Sonoda v. Cabrera*, 255 F.3d 1035, 1039 (9th Cir. 2001) (citing

8  *Hadley v. United States*, 45 F.3d 1345, 1348 (9th Cir. 1995). The Rule 36 provision for

9  withdrawal or amendment specifically provides parties with a potential safe harbor, but "[a]

10  deemed admission can only be withdrawn or amended by motion in accordance with Rule

11  36(b)." *Conlon*, 474. F.3d at 622-23 (citing *Donovan v. Carls Drug Co.*, 703 F.2d 650, 652 (2d

12  Cir. 1983)).

13       Rather than file the requisite motion to withdraw the deemed admissions, Plaintiffs'

14  counsel asks that the Court grant additional time to respond. The Court declines to do so. The

15  reasons for the untimely responses, however justifiable, are irrelevant. *See Carden*, 2011 WL

16  1344557 (E.D. Cal.). At this point, withdrawal must be predicated on an appropriate Rule 36(b)

17  motion – a motion that has not yet been filed with the Court.

18       **C. Plaintiffs' request for an extension to respond to Defendant Hansen's Rule 33**

19  **and Rule 34 discovery requests as well as Hansen's Countermotion to Compel (#25)**

20       By way of their motion, Plaintiffs also request that the Court extend the time to respond

21  to Defendant Hansen's Rule 33 Interrogatories and Rule 34 Requests for Production. The

22  discovery requests were served on September 6, 2011, making responses due on or before

23  October 10, 2011. It is undisputed that Plaintiffs did not respond by the response deadline.

24  Now, Plaintiffs seek a 15-day extension to respond to the discovery requests. Despite first

25  indicating agreement to the extension, Defendant Hansen has now filed a countermotion to

26  compel under Rule 37 asking the Court to find that all objections to the propounded Rule 33 and

27  Rule 34 discovery requests have been waived.

28       As an initial matter, this particular issue, the extension of the deadline to respond to

Defendant Hansen's Rule 33 and Rule 34 discovery requests, puts into sharp relief the requirement that parties personally consult prior to filing discovery motions. Unfortunately, neither party has adhered to personal consultation requirement. Undoubtedly, both the request to extend time to respond to discovery and the motion to compel are "discovery" motions. Pursuant to Fed. R. Civ. P. 37(a)(1), a party seeking to compel responses to discovery requests "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Additionally, LR 26-7(b) provides that "[d]iscovery motions will not be considered unless a statement of the movant is attached thereto certifying that, after personal consultation and sincere effort to do so, the parties have been unable to resolve the matter without Court action."

Both the meet and confer requirement of Rule 37 and the personal consultation requirement of LR 26-7(b) serve important purposes. Compliance is required "to lessen the burden on the court and reduce the unnecessary expenditure of resources by litigants, through the promotion of informal, extrajudicial resolution of discovery disputes." *Nevada Power v. Monsanto*, 151 F.R.D. 118, 120 (D. Nev. 1993). The consultation obligation "promote[s] a frank exchange between counsel to resolve issues by agreement or to at least narrow and focus matters in controversy before judicial resolution is sought." *Id*. In order to serve its purpose, parties must "treat the informal negotiation process as a substitute for, and not simply a formal prerequisite to, judicial review of discovery disputes." *Id*. To do so,

> [t]he parties must present to each other the merits of their respective positions with the same candor, specificity, and support during the informal negotiations as during the briefing of discovery motions. Only after the cards have been laid on the table, and a party has meaningfully assessed the relative strengths and weaknesses of its position in light of all available information, can there be a "sincere effort" to resolve the matter.

*Id*.

In *Shuffle Master, Inc. v. Progressive Games, Inc.*, 170 F.R.D. 166 (D. Nev. 1996), the Court identified two prongs to Rule 37's meet and confer requirement. First, the moving party must provide a certification from counsel which "accurately and specifically conveys to the court

who, where, how, and when the respective parties attempted to personally resolve the discovery

dispute" – the certification requirement.  *Shuffle Master*, 170 F.R.D. at 170.  Second, the moving

party must actually confer or attempt to confer in good faith  – the performance requirement.  *Id*.

The moving party must move beyond cursory statements and "must adequately set forth in the

motion essential facts sufficient to enable the court to pass a preliminary judgment on the

adequacy and sincerity of the good faith conferment between the parties." *Id*. at 171.  A good

faith attempt requires more than the "the perfunctory parroting of statutory language," it requires

a "genuine attempt to resolve the discovery dispute through non judicial means."  *Id*.  Doing so

accomplishes the underlying policy of Rule 37(a)(1) and LR 26-7(b).

        Absent compelling circumstances not present here, the mere exchange of letters has long

been seen as insufficient to satisfy the "personal consultation" requirement.  *See e.g.*, *Hunter v.

Moran*, 128 F.R.D. 115 (D. Nev. 1989).  *Shuffle Master* made clear that the mere exchange of

letters is also insufficient to demonstrate a good faith effort to meet and confer under Rule 37.

*Shuffle Master*, 170 F.R.D. at 172.  Simply put, the exchange of letters is an "inadequate means"

through which counsel may attempt to confer.  To be sure, the exchange of letters may serve to

narrow or inform the issues prior to personal consultation, but both Rule 37(a)(1) and LR 26-7(b)

require more.  Here, the parties efforts to engage in meaningful discussions to resolve these

discovery disputes was woefully inadequate.  Neither counsel has sufficiently demonstrated that

the parties engaged in the type of meet and confer process or personal consultation contemplated

by the rules.  Instead, the parties appear to have exchanged terse demand letters setting forth

ultimatums and using perceived leverage in an effort to extract concessions rather than resolve

disputes.

        The failure is particularly pronounced as it appears the parties actually agreed to much of

what is now before the Court.  Specifically, in his October 25, 2011 letter to opposing counsel,

Hansen's counsel agreed "to stipulate to enlarge discovery deadlines relative to the

Interrogatories and Requests for Production if you [Mr. Reynolds] will agree to stipulate to

enlarge the time within which we may file an Amended Counterclaim ...."  See Ex. G attached

to Def.'s Resp. (#22).  Inexplicably, Plaintiffs' counsel ignored this clear indication of a

1   willingness to agree to extend the response deadlines for the Rule 33 and Rule 34 discovery

2   requests which would have, at a minimum, been useful in framing the discussions during an

3   appropriate personal consultation.  Now, contrary to the representation made in his October 25

4   letter (see Ex. G attached to Def.'s Resp. (#22)), Hansen opposes any extension of the time to

5   respond to the Rule 33 and Rule 34 discovery requests that does not include a waiver of all

6   objections due to untimely responses.

7          Generally, the failure to meet and confer in compliance with Rule 37 or personally

8   consult in compliance with LR 26-7(b) results in denial of the discovery motion.  It is difficult to

9   conclude that an appropriate personal consultation prior to filing the motion to extend would not

10  have resolved this issue.  Unfortunately, the consultation did not happen.  Nevertheless, this case

11  needs to move forward and, therefore, the Court will exercise its discretion and address

12  Plaintiffs' request to extend the response deadlines, which turns on whether Plaintiffs failure to

13  timely respond to the Rule 33 and Rule 34 discovery requests should result in the waiver of

14  objections.

15         Federal Rule of Civil Procedure 33(b)(2) requires that, unless otherwise agreed or ordered

16  by the court, "[t]he responding party must serve its answers and any objections within 30 days

17  after being served with the interrogatories."  The failure to provide specific, timely objections to

18  a Rule 33 discovery results in waiver.  Fed. R. Civ. P. 33(b)(4); *see also Richmark Corp. v.*

19  *Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992) ("It is well established that

20  failure to object to discovery requests within the time required constitutes a waiver of any

21  objection.").  Rule 34 requests for production also require that "[t]he party to whom the request is

22  directed must respond in writing within 30 days after being served."  Fed. R. Civ. P. 34(b)(2)(A).

23  "Although Rule 34 does not contain an express provision that untimely objections are waived,

24  the courts have interpreted the rule regarding waiver consistent with Rule 33."  *E.g. Fifty-Six*

25  *Hope Roade Music, Ltd. v. Maya Collections, Inc.*, 2007 WL 1726558 (D. Nev.) (citations

26  omitted).

27         As held in *Richmark*, the general rule is that the failure to object to Rule 33 or Rule 34

28  discovery requests results in the waiver of any objection.  *Richmark*, 959 F.2d at 1473.  Courts,

1    however, retain discretion to relieve a late or non-responding party from the potentially harsh

2    consequences associated with waiver.  Rule 33 specifically provides that "[a]ny ground not stated

3    in a timely objection is waived <u>unless</u> the court, for good cause, excuses the failure." Fed. R.

4    Civ. P. 33(b)(4) (emphasis added).  Without citing Rule 33, Plaintiffs argue that the Court should

5    apply the "excusable neglect" standard of Rule 6(b)(1)(B).  In *Certain Underwriters at Lloyds v.*

6    *Inlet Fisheries, Inc.*, 232 F.R.D. 609 (D. Alaska) the court applied the "excusable neglect"

7    standard to avoid waivers of interrogatories and requests for production.  *Id.* at 610-11.  In

8    *Osborn v. Bartos*, 2010 WL 3809847 (D. Ariz.), the court rejected the "excusable neglect"

9    standard stating that the *Inlet Fisheries* decision "proffered no explanation for application of the

10   more stringent standard, rather than good cause, as specified in Rule 33(b)(4)."  This Court

11   agrees with the decision in *Osborn*.  There is no persuasive reason to use the more stringent

12   "excusable neglect" standard when Rule 33 itself establishes "good cause" as the standard to be

13   used in determining whether to relieve a party of waiver due to untimely objections or responses.

14            Unlike Rule 33, Rule 34 does not expressly provide for relief from waiver.  Courts that

15   have considered the issue generally agree that there is no reason to treat waiver under Rule 34

16   any different than Rule 33.  *See Fifty-Six Hope Roade Music, Ltd. v. Maya Collections, Inc.*,

17   2007 WL 1726558 (D. Nev.) (applying good faith standard to determine whether to relieve party

18   from waiver under Rule 34); *see also Brown v. Stroud*, 2010 WL 3339524 (N.D. Cal.);

19   ("Although Rule 34 does not expressly provide for any relief from a waiver of objections as does

20   Rule 33, courts have granted such relief upon a showing of good cause."); (*EEOC v. Kovacevich*

21   *"5" Farms*, 2007 WL 1599772 (E.D. Cal.) ("Failure to respond to a Rule 34 request within the

22   time permitted waives all objections . . . absent an extension of time to respond or a showing of

23   good cause.") (citing *Richmark*, 959 F.2d at 1473); *Blumenthal v. Drudge*, 186 F.R.D. 236, 240

24   (D.D.C. 1999) (applying to Rule 34(b) requests for production the principle set forth in Rule

25   33(b)(4) that a court may excuse a failure to timely object for good cause).  This Court will use

26   the "good cause" standard to determine whether to excuse Plaintiffs failure to timely respond to

27

28

1    the Rule 34 requests.[7]

2         As previously noted, the Court retains broad discretion in determining whether there is

3    good cause.  *Zivkovic*, 302 F.3d at 1087 (citing *Mammoth Recreations*, 975 F.2d at 607).  The

4    analysis centers on the diligence of the party seeking the extension (*see* supra. at 10).  In this

5    instance, Plaintiffs' counsel has not adequately explained why the discovery responses had not

6    been compiled or, at minimum, the process of compiling responses had not been started prior to

7    expiration of the response deadlines.  Counsel does cite some litigation and time management

8    concerns, but each of the proffered reasons falls squarely into the category of carelessness.

9    "[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of

10   relief."  *See Mammoth Recreations*, 975 F.2d at 609 (citations omitted); *see also Shapiro,*

11   *Lifschitz & Schram, P.C. v. Hazard*, 97 F.Supp2d 8, 11 (D.D.C. 2000) (in declining to modify a

12   scheduling order to permit the reopening of discovery, an extension of time to submit expert

13   reports, and a continuance to oppose a motion for summary judgment because defendant had

14   failed to show good cause under Rule 16, the Court stated: "Any unfortunate results from the

15   inability of defendants' counsel [] to maintain discover materials or file timely motions for

16   extensions of time arise from their own voluntary choice of attorneys ....).

17        It is also argued that Plaintiffs' counsel Ryan Alexander, once notified of Plaintiffs'

18   desire to move forward with different counsel, believed he was no longer Plaintiffs' attorney.

19   *See* Ex. 2 attached to Pls' Mot. (#21), Alexander Decl. at ¶ 7.  The Court rejects this argument.

20   The Local Rules clearly provide that "[n]o attorney may withdraw after appearing in a case

21   <u>except by leave of Court</u> after notice has been served on the affected client and opposing

22   counsel."  LR 10-6(b) (emphasis added).  At no point during this litigation has Mr. Alexander

23   filed a request to withdraw.  The failure to abide by the Local Rules is not good cause for the

24   requested relief.  *See Pioneer Inv. Servs. Co. V. Brunswick Assocs. Ltd. P'Ship*, 507 U.S. 380,

25   _____

26        [7] It is here where the Court parts company with the rationale in *Osborn v. Bartos*, 2010 WL 3809847
     (D. Ariz.).  In *Osborn*, despite employing the "good cause" standard to determine waiver under Rule 33, the

27   court applied the "excusable neglect" standard to determine whether delinquent responses to Rule 34 requests
     should be excused.  The undersigned agrees with those cases that maintain consistent application of the

28   "good cause" standard regarding whether to excuse delinquent responses to Rule 33 and Rule 34 discovery
     requests.

- 19 -

397 (1993) (parties are "held responsible for the acts and omissions of their chosen counsel");

*Casey v. Albertson's Inc.*, 362 F.3d 1254, 1260 (9th Cir. 2004) ("[a]s a general rule, parties are

bound by the actions of their lawyers"); *Matrix Motor Co., Inc. v. Toyota Jidosha Kabushiki*

*Kaisha*, 218 F.R.D. 667, 676-77 (C.D. Cal 2003) (a former attorney's negligence did not

constitute good cause for continuance of discovery cut-off and trial dates).

More problematic is Plaintiffs' assertion that the miscommunication between Plaintiffs'

counsel Ryan Alexander and Jacob Reynolds regarding the substitution of counsel constitutes

good cause for the requested extension.  Mr. Alexander was not contacted regarding Plaintiffs'

desire to move forward with Jacob Reynolds and the law firm of Hutchison & Steffen until

October 4, 2011.  At that point, the entire response period had almost passed.  Even though Mr.

Alexander knew of the pending discovery response deadlines, there is no evidence that he made

any effort to reach out to opposing counsel to obtain an extension.  Nor does it appear he

apprised Mr. Reynolds of the pending deadlines.  On October 13, 2011, just a few days after

expiration of the response deadlines for the Rule 33 and Rule 34 requests, Mr. Alexander

received the letter from Hansen's counsel informing him that the discovery responses remained

outstanding.  Falsely believing that he was no longer Plaintiffs' attorney, Mr. Alexander did not

respond to the letter.  Further complicating matters, on the date the letter was received, Plaintiffs'

counsel Jacob Reynolds was in the hospital attending the birth of his child.  Thus, according to

Mr. Reynolds, the first he heard of the missed deadliness was October 17, 2011, his first day

back to work after the birth of his child.

Shortly after his return to work, on October 22, 2011, Mr. Reynolds emailed

Defendant Hansen's counsel a letter requesting, among other things, an extension of the

expired discovery response deadlines.  See Ex. G attached to Def.'s Resp. (#22) (confirming

receipt of letter by email on October 22, 2011, and facsimile on October 24, 2011); see also

Ex. F (letter from Reynolds to Hansen's counsel).  On October 25, 2011, Hansen's counsel

sent Reynolds a letter wherein he agreed "to stipulate to enlarge discovery deadlines relative to

the Interrogatories and Requests for Production if you [Mr. Reynolds] will agree to stipulate to

enlarge the time within which we may file an Amended Counterclaim ...."  *See* Ex. G attached

1    to Def.'s Resp. (#22).

2            Certainly the Court may hold that untimely objections are not waived where delay in

3    response is not substantial. *Fifty-Six Hope Road Music, Ltd*, 2007 WL 1726558 *4 (citing

4    *Blumenthal*, 186 F.R.D. at 240 and *Burlington Ins. Co. v. Okie Dokie, Inc.*, 368 F.Supp.2d 83

5    (D.D.C. 2005)).   In *Blumenthal* the plaintiffs responses to the defendant's Rule 33 and Rule 34

6    requests were provided approximately one week after the response deadline.  Believing it would

7    be a better use of time, the plaintiffs determined to forego requesting an extension under Rule 6

8    as they worked to prepare the discovery responses.  The court rejected this strategy noting that it

9    would have likely granted a request for an extension of time had one been made in advance of the

10   response deadline.  Because such a request was not made, the court determined that the plaintiffs

11   choice to forego requesting the extension did not satisfy the good cause standard.  Nevertheless,

12   "in the exercise of its broad discretion" the court found that the plaintiffs had not waived their

13   right to raise objections. *Blumenthal*, 186 F.R.D. at 240.  In *Burlington*, the court, citing

14   *Blumenthal*, determined that a plaintiff did not waive the right to object even though responses

15   were served nine days late because the opposing party (1) suffered no prejudice from the delay

16   and (2) the responding party had not "demonstrated a pattern of misconduct" that would warrant

17   the relatively harsh sanction of waiver. *Burlington*, 368 F.Supp.2d at 91.  However, in *Fifty-Six

18   Hope Road*, the court determined that the failure to serve discovery responses with objections

19   until nearly two months after the responses were due and more than a month after the opposing

20   party requested the responses did not constitute good cause. As a result, the court found that the

21   plaintiffs' objections to the discovery requests had generally been waived. *See Fifty-Six Hope

22   Road Music, Ltd*, 2007 WL 1726558 *4.

23           Here, as in *Blumenthal*, Plaintiffs did not file a timely request to extend under Rule 6.

24   And, unlike the plaintiffs in *Blumenthal* and *Burlington*, discovery responses and objections were

25   not provided shortly after the response deadline had expired.  Only on March 1, 2012, almost **5**

26   months after the responses were due, was the Court made aware that responses had been

27   provided. *See* Pls' LR 7-6(b) letter filed March 6, 2012.  Even that letter is inadequate as it does

28   not provide the date on which the responses were served.  In *Fifty-Six Hope*, the failure to

provide discovery responses until two months after the deadline resulted in a general waiver of

the right to object.  Based on the record currently before it, the responses were at least one month

late and, in all likelihood, probably significantly later.  The Court is of the view that it would be

well within its discretion to find waiver.

Nevertheless, despite the failure to provide timely objections and responses to the

discovery requests, the Court is not going to waive Plaintiffs opportunity to object.  Within a

week of learning about the expired deadlines, Plaintiffs' counsel Jacob Reynolds did request an

extension of time to respond to the discovery deadlines.  At the time counsel made the request,

Defendant Hansen had not filed a motion to compel responses.  In fact, as previously noted,

defense counsel responded to Plaintiffs' counsel's request by agreeing "to stipulate to enlarge

discovery deadlines relative to the Interrogatories and Requests for Production" in exchange

for an enlargement of time within which to file an amended counterclaim.  *See* Ex. G attached

to Def.'s Resp. (#22).  Combining the proposed agreement from defense counsel with the

subsequent filing of the motion to disqualify, which understandably delays activity in a case

while the court works through disqualification, the Court finds there is good cause for the

extension and waiver is not appropriate.  It appears from Plaintiffs' counsel's recent letter (*see*

#29) that responses have been served.  To the extent they have not, Plaintiffs shall have an

additional 5 days to serve those responses.  Failure to provide responses within this time frame

will result in total waiver of all objections, including any claims of privilege.

Finally, Defendant Hansen's countermotion to compel (#25) requests an order compelling

Plaintiffs' to produce their Rule 26(a) disclosures.  The Court will construe this a motion for

sanctions under Rule 37(c).  Unlike motions to compel responses to discovery requests, personal

consultation is not required prior to a motion for sanctions pursuant to Rule 37(c).  *See Dayton*

*Valley Investors v. Union Pacific Railroad Co.*, 2010 WL 3829219 (D. Nev.) (citing *Hoffman v.*

*Construction Protective Services, Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008); *see also Allstate Ins.*

*Co. v. Nassiri*, 2010 WL 5248111 (D. Nev.) (motions made pursuant to Rule 37(b) or (c) are

motions for sanctions and, therefore, it is not required that a party meet and confer prior to

bringing a motion under either rule).

1      Unless exempt, "a party must, without awaiting a discovery request" provide the

2  opposition with initial disclosures pursuant to Rule 26(a).  The categories of initial disclosures

3  are set forth in Rule 26(a)(i) through Rule 26(a)(iv).  Generally, "[a] party must make the initial

4  disclosures at or within 14 days after the parties' Rule 26(f) conference."  Fed. R. Civ. P.

5  26(a)(1)(C).  Here, the parties' agreed that initial disclosures would be made on or before

6  September 5, 2011.  *See* Scheduling Order (#17) (adopting the parties' proposed scheduling order

7  (#16) with modifications).

8      It is undisputed that Plaintiffs failed to make the Rule 26(a) initial disclosures in a timely

9  manner.  According to Hansen's counsel, as of November 15, 2011, he had not received

10  Plaintiffs' initial disclosures.  *See* Def.'s Resp. (#22) at 14:18-19; *see also* Whitehead Decl.

11  attached to Def.'s Resp. (#21) at ¶ 6.  Plaintiffs' did not rebut this charge.  Subsequently, on

12  March 1, 2012, Plaintiffs' counsel sent the Court a Local Rule 7-6(b) letter indicating that initial

13  disclosures had been made.  The untimely disclosures included "over 30 witness, 2790 pages of

14  relevant documents, and more than 150 demonstrative exhibits."  *See* Letter (#29).  Given the

15  foregoing, the Court finds that Plaintiffs' initial disclosures were untimely.

16      Pursuant to Fed. R. Civ. P. 37, the failure "to provide information or identify a witness as

17  required by Rule 26(a) or (e)" results in the non-disclosing party not being "allowed to use that

18  information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the

19  failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  Failure to comply

20  with Rule 26(a) mandates some sanction under Rule 37(c)(1), "the degree and severity of which

21  are within the discretion of the trial judge."  *Kjaer v. HGN, Inc.*, 2010 WL 1052211 (D. Nev.)

22  (citation omitted).  The Ninth Circuit has held that Rule 37(c)(1) "gives teeth to [the disclosure

23  requirements of Rule 26] by forbidding the use at trial of any information required to be

24  disclosed under Rule 26(a) that is not properly disclosed."  *Wintice Group, Inc. v. Longleg*, 2011

25  WL 383039 (D. Nev.) (citing *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106

26  (9th Cir. 2001).

27      Courts are given particularly wide latitude to issue sanctions under Rule 37(c)(1).  *Id*.  It

28  was held in *Yeti* that, generally, an exclusion sanction is considered "self-executing" and

1   "automatic." *Yeti*, 259 F.3d at 1106 (citing Advisory Committee Notes to 1993 Amendments

2   ("[t]he revision provides a self-executing sanction for failure to make a disclosure required by

3   Rule 26(a) . . . [t]his automatic sanction provides a strong inducement for disclosure of material

4   that the disclosing party would expect to use as evidence, whether at a trial, at a hearing, or on a

5   motion.")).  Exclusion has been upheld even when a litigant's entire cause of action or defense is

6   precluded.  *Veritas Operating Corp. v. Microsoft Corp.*, 2008 WL 657936 (W.D. Wash.)

7   (citations omitted).  "Two express exceptions ameliorate the harshness of Rule 37(c)(1): The

8   information may be used if the failure to disclose is substantially justified or harmless."  *Yeti*, 259

9   F.3d at 1106.  The party seeking to avoid Rule 37(c)(1) sanctions bears the burden of showing

10  that any failure is substantially justified or harmless.  *Id*. at 1107.

11          Based on the record before it, the Court cannot conclude that Plaintiffs failure to make

12  initial disclosures was substantially justified.  To the contrary, it appears the failure was, in all

13  likelihood, inadvertent or unintentional.  Neither inadvertent mistakes nor unintentional

14  oversights are sufficient to show substantial justification for delay.  *Baltodano v. Wal-Mart*

15  *Stores, Inc.*, 2011 WL 3859724 (D. Nev.) (citing *R & R Sails Inc. v. Insurance Co. Of State of*

16  *Penn.*, 251 F.R.D. 520, 526 (S.D. Cal. 2008).

17          "Harmlessness may be established if a disclosure is made sufficiently before the

18  discovery cut-off date to give the opposing party adequate time to conduct discovery."

19  *Baltodano*, 2011 WL 3859724 (citing *Frontline Med. Assocs. v. Coventry Health Care*, 263

20  F.R.D. 567, 570 (C.D. Cal. 2009)).  "Disruption to the schedule of the court and other parties is

21  not harmless."  *Id*.  Unfortunately, Plaintiffs' counsel failed to disclose the exact date upon which

22  he made the initial disclosures.  It is clear that they were not made when required and were not

23  made prior to 60 days before the discovery cutoff.  It is difficult to imagine how the failure could

24  be considered harmless under these facts.  However, in his countermotion, Defendant Hansen

25  simply asks that Plaintiffs "make their initial disclosures."  Def.'s Countermotion (#25) at 16:1.

26  This request indicates that the disclosures could have been made "sufficiently before the

27  discovery cut-off date to give the opposing party adequate time to conduct discovery."

28  *Baltodano*, 2011 WL 3859724.  As such, the failure to timely disclose was sufficiently harmless

1    so as to prevent an exclusion sanction.

2         Nevertheless, Rule 37(c)(1) provides that "[i]n addition to or instead of this sanction, the

3    court, on motion and after giving an opportunity to be heard: (A) may order payment of the

4    reasonable expenses, including attorney fees, caused by the failure."  Given Plaintiffs failure to

5    provide timely Rule 26(a) disclosures, the Court will grant Defendant Hansen an opportunity to

6    file an affidavit outlining the reasonable expenses, including attorney's fees, that have accrued

7    because of Plaintiffs failure to make timely Rule 26(a) disclosures.

8                                     **CONCLUSION**

9         Since these motions were filed, the discovery period has expired.  Obviously, given this

10   Order, there is a need to reopen discovery.  The Court is not inclined to grant Plaintiffs' counsel

11   request for an additional 180 days to conduct discovery.  When Plaintiffs' motion (#21) was

12   filed, there were approximately 60 days remaining for the discovery.  Approximately 60 days

13   have passed since the discovery deadline passed.  Thus, absent an extraordinary showing of need,

14   the Court is inclined to limit the additional discovery period to 120 days for **all** parties.

15   Plaintiffs' counsel is instructed to confer with opposing counsel.  The parties shall have **7** days to

16   file a new stipulated discovery plan.  The stipulation **must** fully comply with LR 26-4.  The

17   Court expects a full and frank discussion of the discovery that has been accomplished and the

18   discovery that remains.  As always, the parties are encouraged to pursue early resolution.  The

19   undersigned stands ready to assist in conducting a settlement conference if the parties' so desire.

20        Accordingly, based on the foregoing and good cause therefore,

21        **IT IS HEREBY ORDERED** that Defendant Bert Hansen's Countermotion to Strike

22   (#23) is **denied**.

23        **IT IS FURTHER ORDERED** that Defendant Bert Hansen's Countermotion to

24   Disqualify (#24) is **denied**.

25        **IT IS FURTHER ORDERED** that Plaintiffs' Emergency Motion to Extend Time and

26   Alter Discovery Deadlines Pursuant to FRCP 6 (#21) is **granted in part and denied in part** as

27   follows:

28        1. The parties' request to extend the deadline for motions to amend and the expert

designation and rebuttal deadlines is **granted**.  Plaintiffs' counsel shall confer with opposing counsel to establish new discovery deadlines and file a stipulated discovery plan in conformity with this Order.  The stipulation shall be fully compliant with LR 26-4 and must be filed within 7 days entry of this Order.  Absent extraordinary cause, the proposed discovery period shall not exceed 120 days from the date of this order;

    2.  Plaintiffs' request to extend time to respond to Defendant Hansen's Rule 36 Requests for Admissions is **denied**; and

    3.  Plaintiffs' request to extend time to respond to the Rule 33 and Rule 34 discovery requests is **granted**.  To the extent objections and responses have not been served, Plaintiffs shall provide them by **Tuesday, March 13, 2012**.  The failure to provide responses in the this time period will result in a waiver of objections, including any objections based on a claim of privilege.

    **IT IS FURTHER ORDERED** that Defendant Bert Hansen's Countermotion to Compel (#25) is **granted in part and denied in part**.  Defendant shall have until **Wednesday, March 21, 2012**, to file an affidavit of fees and costs outlining the reasonable expenses, including attorney fees, caused by Plaintiffs failure to provide timely Rule 26(a) disclosures.

    **IT IS FURTHER ORDERED** that, other than as outlined herein, each party shall bear its own costs associated with the foregoing motions.

    DATED this 6th day of March, 2012.


_____
C.W. Hoffman, Jr.
United States Magistrate Judge