UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

STEVEN LIGUORI, *et al.*,           )
               Plaintiffs,            )    Case No. 2:11-cv-00492-GWF
                                )
vs.                                 )    **ORDER**
                                )
BERT HANSEN, *et al.*,              )
               Defendants.            )

This matter is before the Court on Plaintiffs' Motion for Leave to Amend Pleadings (#280), filed on November 10, 2015. Defendant filed his Response to Plaintiffs' Motion for Leave to File Second Amended Complaint (#279) on November 9, 2015.[1] Plaintiffs filed their Reply (#287) on December 4, 2015. The Court conducted a hearing in this matter on January 6, 2016.

## BACKGROUND

On or about November 21, 1999, Plaintiff Bruno Liguori Trading Post, Inc. and Defendant Bert Hansen entered into a written contract pursuant to which Plaintiff Steven Liguori would build a monument sized statue of his "High Scaler" sculpture together with a natural boulder base and erect it near Defendant's store at Hoover Dam.[2] *Proposed Second Amended Complaint (#280), Exhibit 2, "Monument Agreement."* The contract stated that the total price to build and erect the monument . . .

---

[1] Plaintiffs initially filed their proposed Second Amended Complaint on October 23, 2015. *See Docket Entry No. 273*. On October 21, 2015, the Court ordered Plaintiffs to file motion for leave to amend their complaint. *Docket Entry No. 274*. Defendant's Response (#279) predates the actual filing of Plaintiffs' motion for leave to amend. The Court, however, treats it as a response to Plaintiffs' Motion for Leave to Amend (#280).

[2] The facts of this case are more fully set forth in Order (#262), filed on September 18, 2015.

statue was $166,158.00, plus all change orders allowed pursuant to the contract, plus all sales taxes associated with the sale of artwork. *Id., pg. 3.* The contract contained an integration clause stating that it embodied and contained the entire agreement and understanding of the parties. *Monument Agreement, pg. 5*, ¶ 7. E. The parties agree that Defendant Hansen ultimately paid close to $200,000 under the contract based on additional costs that Plaintiff incurred in building and erecting the monument statue.

On or about June 12, 2000, Plaintiff Bruno Liguori Turquoise Trading Post, Inc., as Licensor, and Bert Hansen, "d/b/a Hoover Dam Snacketeria," and Kawana Pohe, "d/b/a Hoover Dam Store," as Licensees, entered into a written Retail Licensing Agreement. *Proposed Second Amended Complaint (#280), Exhibit 3, "Retail Licensing Agreement."* The Retail Licensing Agreement was a two page document with an additional ten pages of written "Terms and Conditions." The Retail Licensing Agreement states in pertinent part as follows:

> ARTWORK: THE HIGH SCALER, AND HOOVER DAM SERIES and any and all rights to title, possession, property interest, copyright reproduction, licensing, intellectual property rights, etc., of every kind, nature and description, whether known or unknown, seen or unseen, real, tangible or intangible, including without limitation names, symbols, emblems, designs, service marks, trademarks, copyrights in graphic designs, logos, visual representations, and likenesses of ARTWORK.
>
> LICENSED AREA: HOOVER DAM, Nevada
>
> Commencement Date:     12th June 2000
> Expiration Date:       Never
>
> LICENSED PRODUCTS: Models, facsimiles, miniatures, maquettes, photographic slides, photographs, cartoons, caricature, post cards, sculptures, T-shirts, hats, silhouettes, or any other popular and widely accepted tourist-related souvenirs.
>
> GRANT OF RIGHTS: Exclusive, Except Bronze Statute
>
> ROYALTIES:
>
> Royalty Rate:     17%
>
> Non-Returnable
> Advance Against
> Royalties:
>
> . . .

> This Agreement includes the terms and conditions on the pages attached hereto and made a part hereof.

*Retail Licensing Agreement, pg. 1.*

The Terms and Conditions of the Retail Licensing Agreement also contained an integration clause stating that it contained the entire understanding of the parties and that no warranties, representations or understandings were made by the parties except those expressly provided in the agreement. *Retail Licensing Agreement, Terms and Conditions, pg. 11*, ¶ 13(e).

Plaintiffs alleged in their original complaint filed on April 1, 2011 that Defendants Bert Hansen and Kawana Pohe contacted Plaintiff Steve Liguori in 1998 for the purpose of commissioning him to design, fabricate, and install a monument scale version of the High Scaler Sculpture. Liguori advised Hansen and Pohe that the cost to create and install the monument statue would be approximately $500,000.00. Hansen and Pohe suggested that instead of an initial payment of $600,000.00, that Plaintiffs agree to create and install the monument statue for a fee of approximately $166,000.00, and an opportunity to share in the proceeds of selling merchandise based on Plaintiff's "High Scaler" sculpture and the Hoover Dam Series. As a result of these negotiations, the parties entered into the June 12, 2000 Retail Licensing Agreement. *Complaint (#1)*, ¶¶ 20-23. Plaintiffs alleged that Defendants breached the Retail Licensing Agreement by failing to provide complete and accurate royalty statements on a quarterly basis, failing to obtain prior approval for certain souvenirs and other items which were based on Plaintiffs' copyrighted works, paying only minimal royalties, and failing to obtain world-wide copyright protection for either approved or unapproved licensed artwork. *Id.*, ¶¶ 25-33. The original complaint also alleged that "Defendants have even used LIGUORI'S works in a number of ways that go far beyond licensed purposes. For instance, Defendants operate a restaurant known as the "High Scaler Café" which utilizes LIGUORI'S work in its marketing materials, menu, signage, and other items." *Id.*, ¶ 2. The original complaint alleged causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing with respect to the Retail Licensing Agreement and copyright infringement. The original complaint did not allege any claim for breach of the Monument Agreement, or any claims for fraud or negligent misrepresentation.

Plaintiffs filed a first amended complaint on March 14, 2013 in which they repeated the allegations set forth in paragraphs 20-23 of their original complaint. *First Amended Complaint (#78)*, ¶¶ 20-23. Plaintiffs alleged causes of action for infringement of three copyrights belonging the Plaintiffs, breach of contract, tortious breach of contract and breach of the implied covenant of good faith and fair dealing with respect to the Retail Licensing Agreement, and claims for breach of fiduciary duty and fraud.   In their fraud claim, Plaintiffs alleged as follows:

> Having viewed Liguori's original artwork for the High Scaler sculpture and the High Scaler drawing, being aware that [Plaintiffs] owned the copyrights to those works, and then causing to be manufactured and sold articles bearing images substantially similar to the High Scaler sculpture and the High Scaler drawing, Hansen and Pohe defrauded the Plaintiffs by failing to disclose these facts to the Plaintiff.
>
> Hansen and Pohe deliberating concealed material facts from Plaintiff, that they were infringing on the copyrights, and told Plaintiff that they were not selling the products any longer when in fact they still to this day sell the products.

*First Amended Complaint (#78), pg. 9*, paragraph 66 and misnumbered paragraph 50.

In his answers to the original and first amended complaints, Defendant Hansen admitted that he and Mr. Pohe contacted Mr. Liguori in 1998 for the purpose of commissioning him to build and install the monument statue. *Answer to Complaint (#10), pg 3; Answer to First Amended Complaint (#86), pg. 4*. Defendant Hansen denied, however, that Liguori advised him and Mr. Pohe that the cost to build the monument statue would be $500,000 or that Defendant Hansen and Pohe proposed that in lieu of full payment for the statue, Plaintiffs would share in the proceeds of selling merchandise based on the High Scaler sculpture and Hoover Dam Series. *Id.*   Defendant Hansen alleged numerous affirmative defenses including the parole evidence rule, the statute of limitations, and the equitable doctrine of laches. *Answer (#10), pgs. 7-9; Answer (#86), pgs. 8-12*.

This case was tried to a jury on May 1-12, 2015.  Prior to trial, Plaintiffs dismissed their claims for tortious breach of contract, breach of fiduciary duty, and fraud.  The case was tried on Plaintiffs' claims for breach of contract, contractual breach of the covenant of good faith and fair dealing, and copyright infringement.  The jury returned verdicts in Plaintiffs' favor on both their breach of contract and copyright infringement claims.  On September 18, 2015, this Court granted

Defendant Hansen's motion for new trial. *Order (#262)*. The Court held, as a matter of law, that the Retail Licensing Agreement applied only to the sale of souvenirs, and did not apply to the Defendant's sale of food or water. The Court held, however, that Plaintiffs could recover damages for copyright infringement based on Defendant Hansen's unauthorized use of Plaintiff's copyright(s) to market his sale of food, water, and to otherwise "brand" his store or business.

In their proposed second amended complaint, Plaintiffs initially sought to add causes of action for fraud in the inducement, intentional misrepresentation, and negligent misrepresentation. *Proposed Second Amended Complaint, Third, Fourth and Fifth Causes of Action.* Plaintiffs' proposed Sixth Cause of Action seeks to allege claims for infringement of three copyrights, rather than proceed on a claim for infringement of one copyright as Plaintiffs did during the previous trial. In their reply brief, Plaintiffs withdrew their proposed claims for fraud in the inducement and intentional misrepresentation. However, they still seek to allege a claim for negligent misrepresentation. *Reply (#287), pg. 2*.

## DISCUSSION

### 1. **Standard for Amending Pleadings.**

Leave to amend pleadings under Rule 15 of Federal Rules of Civil Procedure is generally favored. *Graber v. Zaidi*, 2010 WL 3238918, *3 (D.Nev. Aug. 12, 2010), citing *Pierce v. Multnomah County,* 76 F.3d 1032, 1043 (9th Cir.), *cert. denied,* 519 U.S. 1006, 117 S.Ct. 506, 136 L.Ed.2d 397 (1996). This liberal policy no longer controls, however, once the court has entered a pretrial scheduling order pursuant to Rule 16 and the time for amending pleadings under the scheduling order has expired. *Coleman v. Quaker Oats Co.,* 232 F.3d 1271, 1294–95 (9th Cir. 2000). "A schedule may be modified only for good cause and with the judge's consent." Fed.R.Civ.P. 16(b)(4). "Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 609 (9th Cir.1992). If that party was not diligent, the inquiry should end. *Id.* "[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite diligence of the party seeking the

extension." Fed.R.Civ.P. 16 advisory committee's notes (1983 amendment). Local Rule 6-1(b) also states that a request made after the expiration of the specified period shall not be granted unless the movant demonstrates that the failure to act was the result of excusable neglect.

If the moving party can show good cause under Rule 16(b), then the court must consider whether the amendment is proper under Rule 15. *Graber*, at *3, citing *Sosa v. Airprint Sys., Inc.,* 133 F.3d 1417, 1419 (11th Cir.1998); *Johnson,* 975 F.2d at 607–08. If permitting an amendment would (1) prejudice the opposing party, (2) produce undue delay in the litigation, (3) result in futility for lack of merit, or (4) if such amendment is brought in bad faith, then the court may deny the motion. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (listing these factors among others to be considered). Prejudice is the most important factor to consider. *Zenith Radio Corp. v. Hazeltine Res., Inc.,* 401 U.S. 321, 330–31, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971). Absent prejudice, or a strong showing under any of the remaining *Foman* factors, a presumption exists in favor of granting leave to amend. *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir. 2003).

The deadline to amend pleadings in this case expired on March 30, 2012. *Docket Entry No. 39.* Plaintiffs filed their motion for leave to file their first amended complaint on that date. *See Docket Entry No. 45.* No further extension of the deadline to amend pleadings was granted. It is therefore appropriate to first analyze Plaintiffs' motion for leave to file their proposed second amended complaint under Rule 16(b)'s good cause standard.

**2.      Proposed Cause of Action for Negligent Misrepresentation.**

The proposed Second Amended Complaint alleges that Defendant Bert Hansen and Kawana Pohe contacted Plaintiff Steven Liguori in 1998 for the purpose of commissioning him to design, fabricate and install a monument version of his High Scaler statue near Hoover Dam. Liguori advised Hansen and Pohe that the cost to create and install the monument would be approximately $500,000.00. Plaintiffs allege that Hansen and Pohe did not want to pay Liguori $500,000.00 for the monument, and instead offered Liguori an alternative arrangement. Hansen and Pohe stated that if Liguori would create and install the monument for "cost" (approximately $166,000.00), then Hansen and Pohe would pay Liguori a percentage royalty of all food, merchandise, and souvenirs

sold at their Hoover Dam-related stores in the form of a licensing agreement.[3] Defendant Hansen allegedly represented that the revenue generated from the licensing agreement would secure Liguori and his children financially, and that Liguori would more than make up for the difference between the $500,000.00 he quoted for the monument and the $166,000.00 in costs to create and install the monument. *Proposed Second Amended Complaint (#280)*, ¶¶ 10-15.

Plaintiffs proposed Fifth Cause of Action further alleges:

> Defendant made false representations to Plaintiffs in that he represented and assured Plaintiffs, *inter alia*, if Plaintiffs would create and install the Monument for "cost" (approximately $166,000.00) then in exchange for Defendant's right to use Plaintiff's copyrighted works in conjunction with his Hoover-Dam related store, then Defendant would pay Plaintiffs a percentage royalty of all food, merchandise, and souvenirs sold at his Hoover Dam-related store(s) through a licensing agreement.
>
> Defendant also made a false representation to Plaintiffs that by virtue of the Licensing Agreement, Defendant would pay Plaintiffs a percentage of the sales at the store he operates near Hoover Dam.

*Proposed Second Amended Complaint (#280)*, ¶¶ 67, 68.

The Nevada Supreme Court recognized the tort of negligent misrepresentation in *Bill Stremmel Motors, Inc. v. First Nat. Bank of Nev.*, 94 Nev. 131, 575 P.2d 938, 940 (1978) which adopted the definition set forth in the Restatement (Second) of Torts § 552, 1977 ed., pp. 126-127. The Nevada Supreme Court has not specifically held that this cause of action includes a claim based on a misrepresentation that induced the plaintiff to enter into a contract. Courts in other jurisdictions, however, recognize such a cause of action.[4]

. . .

---

[3] Plaintiffs' original and first amended complaints contained no allegation that Defendant Hansen or Pohe stated that Plaintiff would be paid a royalty on the sales of food or merchandise other than souvenirs.

[4] Nevada recognizes a cause of action for fraud in the inducement, the elements of which are: (1) a false representation made by defendant, (2) defendant's knowledge or belief that the representation was false (or knowledge that it had an insufficient basis for making the representation), (3) defendant's intention to induce plaintiff to consent to the contract's formation, (4) plaintiff's justifiable reliance on the misrepresentation, and (5) damage to plaintiff resulting from such reliance. *J.A. Jones Constr. v. Lehrer McGovern Bovis*, 120 Nev. 277, 290, 89 P.3d 1009, 1018 (2004). A claim for fraud in the inducement must be proven by clear and convincing evidence. *Id.* Plaintiffs no longer seek to assert a claim for fraud in the inducement.

A cause of action for fraud or negligent misrepresentation must be brought within three years. NRS 11.190(3)(c)-(d); *Nevada State Bank v. Jamison Fam. Part.*, 106 Nev. 792, 799-800 , 801 P.2d 1377, 1382 (1990). *See also Kancilla v. Claymore and Dirk Ltd. Partnership*, 2014 WL 3731862, *1 (Nev. July 24, 2014) (unpublished disposition). Causes of action for fraud or negligent misrepresentation are deemed to accrue on discovery of the facts constituting the fraud or misrepresentation. NRS 11.190(3)(d).

The false representations that allegedly induced Plaintiffs to enter into the contracts were made in 1999 or 2000. Plaintiffs' original complaint was filed nearly 11 or 12 years later. It is difficult to image that Plaintiffs did not discover the facts constituting negligent misrepresentation shortly after, or, at most, within a few years after entering into the contracts.[5] Plaintiffs, however, did not allege such a claim in their original complaint. They, instead, allowed another four and a half years to expire before attempting to allege any cause of action based on fraudulent or negligent inducement.[6] The allegations in the original and first amended complaints show that Plaintiffs were on notice of the facts that allegedly supported a claim for fraudulent or negligent inducement. Plaintiffs have not pointed to any evidence adduced during trial that somehow alerted them, for the first time, to the fact that they had been negligently induced to enter into the contracts.

Plaintiffs have not shown good cause under Rule 16(b) to justify granting them leave to assert a cause of action for negligent misrepresentation. Because Plaintiffs were not diligent in seeking leave to allege this cause of action, their motion to do so at this late stage of the litigation should be denied. Furthermore, a claim for negligent misrepresentation was, in all likelihood, already barred by the statute of limitations when Plaintiffs filed their original complaint in April 2011. Granting leave to permit Plaintiffs to allege a claim for negligent misrepresentation would therefore also be futile.

---

[5] The evidence presented at trial last year established that the total royalties paid to Plaintiffs under the Retail Licensing Agreement were very modest and far, far short of compensating Plaintiffs for the alleged $500,000 value of the monument statue.

[6] Contrary to the assertion in their *Reply (#287), pg. 3*, Plaintiffs did not allege a claim for fraud in the inducement in their first amended complaint. Instead, they alleged that Defendant fraudulently concealed his infringement of their copyrights.

Defendant also argues that Plaintiffs' proposed claim for negligent misrepresentation is barred by the economic loss doctrine. "[T]he economic loss doctrine marks the fundamental boundary between contract law, which is designed to enforce the expectancy interests of the parties, and tort law, which imposes a duty of reasonable care and thereby [generally] encourages citizens to avoid causing physical harm to others." *Terracon Consultants v. Mandalay Resort*, 125 Nev. 66, 206 P.3d 81, 86 (2009) (quoting *Calloway v. City of Reno*, 116 Nev. 250, 357, 993 P.2d1259, 1263 (2000), *overruled on other grounds by Olson v. Richard*, 120 Nev. 240, 241-44, 89 P.3d 31, 31-33 (2004). "[T]he doctrine bars unintentional tort actions when the plaintiff seeks to recover 'purely economic losses.'" *Id.*, 125 Nev. at 73, 206 P.3d at 86, (citing *Local Joint Exec. Bd. v. Stern*, 98 Nev. 409, 411 (1982). *Terracon* specifically held that the economic loss doctrine bars "negligence-based claims against design professionals, such as engineers and architects, who provide services in the commercial property development or improvement process, when the plaintiff seeks to recover purely economic losses[.]" 125 Nev. at 69, 206 P.3d at 83. The court stated that "[t]he doctrine expresses the policy that the need for useful commercial economic activity and the desire to make injured plaintiffs whole is best balanced by allowing tort recovery only to those plaintiffs who have suffered personal injury or property damage." *Id.*, 125 Nev. at 75, 206 P.3d at 87.

*Terracon* noted that courts have made exceptions to the economic loss doctrine to allow recovery in certain categories of cases, such as negligent misrepresentation and professional negligence actions against attorneys, accountants, real estate professionals and insurance brokers. 125 Nev. at 75, 206 P.3d at 87. Because the certified question before the court did not involve a cause of action for negligent misrepresentation, the court did not decide whether such a claim is barred under the economic loss doctrine. The Nevada Supreme Court reached this issue in *Halcrow v. Eighth Jud. Dist. Ct.*, 129 Nev. Adv. Op. 42, 302 P.3d 1148 (2013) in which it held that a claim for negligent misrepresentation against a structural steel engineer on a commercial construction project was barred by the doctrine. The court stated:

> In *Terracon*, we left open the door for exceptions to the economic loss doctrine for negligent misrepresentation claims "in certain categorie[y] of cases when strong countervailing considerations weigh in favor of imposing liability." 125 Nev. at 73, 206 P.3d at 86. Liability is proper in cases where there is significant risk that "the law

> would not exert significant financial pressures to avoid such negligence." *Id.* at 76-77, 206 P.3d at 88. These types of cases encompass economic losses sustained, for example, as a result of defamation, intentionally caused harm, negligent misstatements about financial matters, and loss of consortium. *Barber Lines A/S v. M/V Donau Maru*, 764 F.2d 50, 56 (1st Cir. 1985) (citing numerous exceptions to the economic loss doctrine that have been accepted by the courts). However, in the context of commercial construction design professionals, negligent misrepresentation claims do not fall into such a category because "contract law is better suited" to resolve such claims. *Terracon*, 125 Nev. at 77, 206 P.3d at 89. Further in commercial construction situations, the highly interconnected network of contracts delineates each party's risks and liabilities in case of negligence, which in turn "exert significant financial pressures to avoid such negligence." *Id.* at 77, 206 P.3d at 86.

*Halcrow*, 302 P.3d at 1153.

The Court also stated that complex construction contracts generally include provisions addressing economic losses and, therefore, the parties' "'disappointed economic expectations'" are better determined by looking to the parties' intentions as expressed in their agreements. *Id.*, 302 P.3d at 1153.

Federal district court decisions in Nevada have applied the economic loss doctrine to bar claims for negligent misrepresentation besides those arising in or from commercial construction contracts. In *Fidelis Holdings, Inc. v. Hand*, 2015 WL 4997318, *7-*8 (D.Nev. August 19, 2015), the plaintiffs alleged that defendant made negligent misrepresentations relating to his performance of a contract to assist plaintiffs in obtaining a state license to operate medical marijuana dispensaries. Because the plaintiffs only sought damages for potential lost profits resulting from their failure to obtain a license, the court held that the claim was barred under the economic loss doctrine. In *CH2E Nevada, LLC v. Latif Mahjoob*, 2015 WL 6438297, *3-*4 (D.Nev. October 21, 2015), the court held that plaintiffs' claim for negligent misrepresentation relating to defendant's performance of a contract to supply industrial equipment was barred by the economic loss doctrine.

*Halcrow, Fidelis* and *CH2E Nevada* involved claims for negligent representation relating to defendants' performance of their contracts. The proposed cause of action in this case, however, is predicated on a negligent misrepresentation that induced Plaintiffs to enter into the contracts. Courts in other jurisdictions have held such claims are not barred by the economic loss doctrine. *Wyle v. Lees*, 33 A.3d 1187, 1191-92 (N.H. 20011); *MacDonald v. Old Republic Nat. Title Ins. Co.*,

882 F.Supp.2d 236, 246 (D.Mass. 2012); *Marvin Lumbar and Cedar Co. v. PPG Industries*, 223 F.3d 873, 885 (8th Cir. 2000); *Rich Products Corp. v. Kemutec, Inc.*, 66 F.Supp.2d 937, 977 (E.D.Wis.1999); *United Intern. Holdings v. Wharf (Holdings)*, 210 F.3d 1207, 1226-27 (10th Cir. 2000); and *Howe v. LC Philly, LLC*, 2011 WL 1465446 (E.D.Pa. April 15, 2011).

In *Wyle v. Lees*, the plaintiff purchased a residential property from the defendants which contained numerous code violations that were not disclosed prior to execution of the purchase and sale agreement. Prior to the sale agreement, the defendants stated in writing that they were not aware of any modifications or repairs made to the property without the necessary permits. The defendant also verbally assured plaintiff that he had done "everything the Town asked me to do." The plaintiff sued for negligent misrepresentation to recover damages for the expenses he incurred to bring the property into code compliance. In holding that plaintiff's claim was not barred by the economic loss doctrine, the New Hampshire Supreme Court stated that "[m]any courts have distinguished those negligent misrepresentation claims that center upon an alleged inducement to enter into a contract from those that focus upon performance of the contract. . . . This approach is entirely consistent with the principles behind the economic loss doctrine. Indeed, it differentiates between negligence claims based merely upon the breach of a contractual duty, the risks of which could have been allocated by the parties in their agreement, and those claims that are entirely separate and distinct from the material terms of the agreement." 33 A.3d at 1191. The court stated that plaintiff's claim did not relate to a breached promise to perform the terms of the contract, and did not attempt to recharacterize a breach of contract claim as a negligent misrepresentation. Instead, "defendant's misrepresentations, unrelated to any material terms of the actual purchase and sale agreement, induced [plaintiff] to enter into the agreement." *Id.* at 1192.

In *Howe v. LC Philly*, the plaintiff alleged that defendant fraudulently or negligently induced him to enter into a purported partnership agreement to open and manage multiple franchise pizza stores. The plaintiff alleged that defendant's principal owner knew he was not offering a true partnership to him, but rather, intentionally or negligently presented the contract as a partnership to entice plaintiff to accept the contract. The court held that plaintiff's claims for fraud in the inducement and negligent misrepresentation were not barred by Pennsylvania's "gist of the action"

or economic loss doctrines. The court noted that Pennsylvania courts recognize an exception to these doctrines where a claim of fraud in the inducement is alleged, rather than a claim of fraud relating to the performance of a contract. 2011 WL 1465446, at *4, *6. The court stated that "[t]his exception applies because fraudulent inducement tends to be 'collateral to (i.e., not 'interwoven' with) the terms of the contract itself." *Id.*, citing *Etoll Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 17 (Pa.Super.Ct. 2002). *See also Gratz College v. Synergis Education Inc.*, 2015 WL 5783682, *5 (E.D.Pa. Oct. 5, 2015).

Based on *Terracon's* statement that certain types of claims for negligent misrepresentation are not barred by the economic loss doctrine, and the limited scope of the decision in *Halcrow,* a claim based on a negligent misrepresentation that induced the plaintiff to enter into a contract is probably not barred under Nevada law by the economic loss doctrine. Because other grounds support denial of Plaintiff's motion to allege this claim, however, it is not necessary for this Court to predict how the Nevada Supreme Court will decide this question.

      **3.**      **Proposed Copyright Infringement Claims.**

In their proposed Second Amended Complaint, Plaintiffs seek to allege claims for infringement of three copyrights— those pertaining the High Scaler Sculpture, the High Scaler Monument and the High Scaler Drawing. These claims for copyright infringement were alleged in the first amended complaint. At trial, however, Plaintiffs agreed to submit the case to the jury based only on infringement of the copyright for the High Scaler Drawing. Plaintiffs state in their motion that evidence exists to establish that Defendant also infringed the copyrights for the High Scaler Sculpture and High Scaler Monument. During the hearing on this motion, Defendant argued that Plaintiffs are legally limited to a claim for infringement of one copyright based on the doctrine or theory of "derivative copyright." This argument was not addressed in Defendant's written opposition or well developed during the hearing. The Court also doubts its validity. Plaintiffs are therefore permitted to allege claims for infringement of all three copyrights, without prejudice to Defendant's right to demonstrate that Plaintiffs are legally limited to a claim for infringement of only one copyright.

. . .

Plaintiffs are also permitted to file a second amended complaint to "clean up" their factual and legal allegations, such as by eliminating the references to Kawana Pohe as a defendant and the causes of action in the first amended complaint that were previously dismissed. Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Leave to Amend Pleadings (#280) is **granted** in part and **denied** in part as follows:

1. Plaintiffs' motion for leave to allege a cause of action for negligent misrepresentation is **denied**.

2. Plaintiffs' motion for leave to allege claims for infringement of the three copyrights is **granted**, without prejudice to Defendant's right to argue that Plaintiffs are legally limited to a claim for infringement of one copyright.

3. Plaintiffs are granted leave to "clean-up" the allegations from their previous complaint, without otherwise attempting to allege any new claims or reallege claims that were previously dismissed.

4. Plaintiffs shall file a revised Proposed Second Amended Complaint within seven (7) days of the filing of this order. The Court will review the proposed pleading and authorize it to be filed if it complies with this order.

DATED this 25th day of February 2016.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge