# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| STEVEN LIGUORI, *et al.*, | ) |
|         Plaintiffs, | ) Case No. 2:11-cv-00492-GWF |
| vs. | ) **ORDER** |
| BERT HANSEN, *et al.*, | ) |
|         Defendants. | ) |

On June 17, 2016, the jury in this action returned a verdict in favor of Plaintiffs on their claim for breach of contract, awarding damages in the amount of $47,817.36. The jury also entered a verdict in favor of the Plaintiffs on their claim for copyright infringement, finding that Defendant's infringement was willful and awarding Plaintiffs statutory damages of $130,000.00. The Court conducted a status hearing on June 23, 2016 to discuss the calculation of prejudgment interest to be included in the judgment. It was agreed with counsel that the parties would brief the issues relating to the award of prejudgment interest. Pursuant to the agreed briefing schedule, Plaintiffs filed their Brief (ECF No. 380) on July 1, 2016. Defendant filed his Response (ECF No. 381) on July 8, 2016, and Plaintiffs filed their Reply (ECF No. 383) on July 22, 2016.

## **BACKGROUND**

This case was previously tried to a jury in May 2015. The jury in the first trial awarded a substantial verdict to Plaintiffs on their breach of contract claim and also awarded the maximum amount of statutory damages for willful copyright infringement. Prior to the jury verdict, the parties stipulated to a judgment of $19,000.00 on Defendant's counterclaim for breach of contract. The Court subsequently granted Defendant's motion for new trial on Plaintiffs' breach of contract and copyright infringement claims. The Court stayed entry of Defendant's $19,000.00 stipulated judgment pending a

retrial, verdict and judgment on Plaintiffs' claims.

Plaintiffs' claim for breach of contract arose from the written "Retail Licensing Agreement" (hereinafter "Agreement") entered into by the parties on June 12, 2000. In that agreement, Plaintiffs permitted Defendant to manufacture and sell Licensed Products, i.e. souvenirs, bearing reproductions of Plaintiff's copyrighted statues and drawing of the "High Scaler." The Agreement provided for payment of a 17 percent royalty on the sale of Licensed Products. *Plaintiff's Brief (ECF No. 380), Exhibit 1, Retail Licensing Agreement, pg. 1.* Section 2 of the Terms and Conditions of the Agreement further stated:

> (a)   The Royalty Rate shall be applicable to the gross selling price of all Licensed Products delivered or shipped, without deduction of any costs or expenses incurred in the manufacture, advertisement, distribution, or sale thereof, or from uncollectible accounts. Royalties due for each calender quarter after the date hereof shall be paid to Licensor within fifteen (15) days after the last day thereof.
> . . .
> (d)   All payments made to Licensor shall be in United States Currency. Time is of the essence with respect to all payments due Licensor. Interest at the rate of one and one half percent (1 1/2%) per month shall accrue on any amount due Licensor from and after the date upon which payment is due until the date said payment is actually made.

*Retail Licensing Agreement, pg. 3.*

Nevada Revised Statute (NRS) § 11.190.1(b) provides a six year statute of limitations for an action upon a written contract. Plaintiffs filed the instant lawsuit on April 1, 2011. They were therefore entitled to seek recovery of any unpaid royalties from April 1, 2005 through the last date Licensed Products were sold.

Plaintiffs' accountant expert, Annette Carro, testified at trial regarding the amount of royalties that were due from the sale of Licensed Products for the period of April 1, 2005 through September 30, 2012. Based on her review of Defendant's inventory records and profit and loss statements, Ms. Carro estimated that the total amount of royalties earned during this 7 and 1/2 year period was $78,617.00. Ms. Carro arrived at this amount through the following methodology: She reviewed Defendant's quarterly inventory records which identified Licensed Products subject to the Agreement by the letters "HS." She also included items identified as "rock" which she was informed were Licensed Products subject to the Agreement. Ms. Carro then determined the percentage that Licensed Products in the

inventory reports bore to the total sales inventory for each quarter. (Defendant's store primarily sold food items, including drinks.) She multiplied that inventory percentage for Licensed Products by the total sales for each month from April 1, 2005 through September 30, 2012 to estimate the total sales of Licensed Products. She then multiplied the total amount allocated to the sale of Licensed Products by the royalty rate of 17 percent to arrive at the estimated royalty amount. Ms. Carro did not make any deduction for royalties that were actually paid to Plaintiff.

Ms. Carro's calculation also included royalties on the sale of a book, "The Story of Hoover Dam," that was sold in Defendant's store. Defendant purchased and sold copies of a version of this book, known as "Version C," that contained the image of Plaintiff's copyrighted "High Scaler" drawing on the back cover. Ms. Carro testified that it was her understanding that these books sold for $17.95. A 17% royalty on this amount was approximately $3.00. Ms. Carro was not aware that other versions of the book, which did not contain the "High Scaler" drawing on the back cover, were sold in Defendant's store. She therefore included all sales of the "Story of Hoover Dam" during the subject period in her calculation of royalties. Ms. Carro testified that royalties for the sales of "The Story of Hoover Dam" constituted $46,000.00 of the total $78,617.00 in alleged royalties. During final argument, Plaintiff's counsel allocated $46,199.46 of the requested damages for royalties to the sale of "The Story of Hoover Dam" and $32,417.54 to the sale of other Licensed Products.

Defendant raised a number of issues regarding Plaintiffs' estimate of their breach of contract damages, including the number of books sold by Defendant which bore the "High Scaler" drawing on the back cover and whether Ms. Carro's estimate of the royalties for other Licensed Products was reasonable. The jury was also provided with evidence regarding the amount of royalties that were paid to Plaintiff under the Agreement. The jury's verdict of $47,817.36 is the total amount of unpaid royalties awarded to Plaintiff for the sale of Licensed Products during the period from April 1, 2005 through September 30, 2012.

**DISCUSSION**

Nevada Revised Statute (NRS) § 99.040.1 states as follows:

> 1. When there is no express contract in writing fixing a different rate of interest, interest must be allowed at a rate equal to the prime rate at the largest bank in Nevada, as ascertained by the commissioner of

> financial institutions, . . . plus 2 percent upon all money from the time it becomes due in the following cases:
>
> (a) Upon contracts, express or implied, other than book accounts.
>
> (b) Upon the settlement of book or store accounts from the day on which the balance is ascertained.

In *Paradise Homes, Inc. v. Central Surety and Ins. Corp.*, 84 Nev. 109, 437 P.2d 78, 83 (1968), the Nevada Supreme Court stated that pursuant to this statute "[i]t is beyond argument that interest is recoverable as a matter of right in actions upon contract, express or implied, upon all money from the time it becomes due." The Court stated that "[t]hree items must be determined to enable the trial court to make an appropriate award of interest: (1) the rate of interest; (2) the time when it commences to run; and (3) the amount of money to which the rate of interest must be applied." *Id.*  The Court further stated:

> The statute also states that interest runs from the time "money becomes due." We construe that to be the time when performance was due as resolved by the court upon trial of the cause. The amount of money to which the interest rate will be applied must be determined by the following factors: (1) if the contract breached provides for a definite sum of money, that sum; (2) if the performance called for in the contract, the value of which is stated in money or is ascertainable by mathematical calculation from a standard fixed in the contract or from established market prices of the subject matter, that sum. Pre-judgment interest shall be allowed on the amount of the debt or money so determined, after making all deductions to which the defendant may be entitled. (citations omitted).

*Id.*

Prejudgment interest may not be awarded when the amount of money owed under the contract is neither definite nor readily ascertainable. *M.C. Multi-Family Dev. v. Crestdale Assocs.*, 124 Nev. 901, 183 P.3d 536, 546-47 (2008) and *Jeaness v. Besnilian*, 101 Nev. 536, 706 P.2d 143 (1985). *See also Alter v. Resort Properties of America*, 2014 WL 2466282, *4 (Nev.Sup.Ct. May 30, 2014) (unpublished disposition).

The Agreement in this case provided for the payment of money that was "ascertainable by mathematical calculation from a standard fixed in the contract." First, the Agreement provided for the payment of a 17 percent royalty on the gross sales price of each Licensed Product. Second, the Agreement provided that royalties were to be paid within 15 days after the last day of each calendar

4

quarter in which sales of Licensed Products occurred. Third, the Agreement provided that "[i]nterest at the rate of one and one-half percent (1 1/2 %) per month shall accrue on any amount due Licensor from and after the date upon which said payment is due until the date said payment is actually made." *Retail Licensing Agreement, pg. 3.* Thus, interest began to accrue on unpaid royalties fifteen days after the end of the calendar quarter in which Licensed Products were sold.[1]

Ms. Carro made her estimate of the royalties by reviewing Defendant's inventory records for each quarter, and Defendant's profit and loss statements for each month, during the period from April 1, 2005 through September 30, 2012. Based on that method, it appears that Ms. Carro could have testified as to the amount of royalties that accrued during each calendar quarter, or each year between April 1, 2005 and September 2012. She was not asked, however, to provide such testimony. It is no doubt true that some of the royalties accrued and became payable years before September 30, 2012. It unknown, however, whether the sales of Licensed Products were evenly distributed over quarters between April 2005 and September 2012, or whether substantial sales occurred in some quarters or years versus other periods in which relatively few Licensed Products were sold.

Plaintiffs argue that prejudgment interest should be granted on the entire $47,817.36 damage award from April 1, 2005 because Defendants failed to preserve or produce records which would have specifically identified the dates and amounts of the sales of Licensed Products. While there is some fairness in this argument, Plaintiffs did not file their lawsuit until nearly eleven years after the Agreement was entered into which may explain why documents were no longer available for production and review. Defense witnesses also testified that Plaintiff was provided with documents showing the sales of souvenirs on which the royalties were calculated at the time payments were made. In any event as stated above, Ms. Carro could have provided a break down of her calculation of the royalties on a quarter-by-quarter, or year-by-year basis, but she was not asked to do so in her testimony.

---

[1] The Court does not understand what Plaintiffs mean by their assertion that the interest provision in the Agreement "is not a prejudgment interest provision." *Plaintiffs' Brief (ECF No. 380), pgs 3-4.* Pursuant to NRS § 99.040.1, interest on unpaid royalties was recoverable at the rate provided for in the Agreement from the date that payment was due. If Plaintiffs wants to stipulate to a lower interest rate, however, they are free to do so. If Plaintiffs contend that they are entitled to both "contractual" interest and "statutory" interest on the same royalties for the same time period, the Court rejects such an assertion as having no legal merit.

During the June 23, 2016 status hearing, the Court raised the possibility of dividing the $47,817.36 evenly among the years between 2005 and 2012 as a method for fairly apportioning an award of the prejudgment interest. This was opposed by the Defendant. Based on the cases discussed above, as well as the decision in *Las Vegas-Tonopah-Reno Stage v. Gray Line*, 106 Nev. 283, 792 P.2d 386, 389-390 (1990) discussed hereinafter, there does not appear to be a valid legal basis to impose such an allocation. Because of the lack of evidence establishing when specific royalty amounts accrued, there is no way to validly calculate an award of prejudgment interest pursuant to NRS § 99.040.1 for the time period prior to September 30, 2012.

Plaintiffs argue that they are also entitled to recover prejudgment interest pursuant to NRS § 17.130.2 which states as follows:

> When no rate of interest is provided by contract or otherwise by law, or specified in the judgment, the judgment draws interest from the time of service of the summons and complaint until satisfied, except for any amount representing future damages, which draws interest only from the time of the entry of the judgment until satisfied . . . .

Although NRS § 17.130.2 authorizes the recovery of interest on damages from the date of service of summons and complaint, it also requires proof as to when those damages were incurred in order for the court to award prejudgment interest thereon. In *Las Vegas-Tonopah-Reno Stage v. Gray Line*, the Nevada Supreme Court held that NRS § 17.130 was ambiguous as to when interest begins to run on damages that are incurred after the service of the complaint, but prior to the entry of judgment. The Court stated:

> We do not believe that the legislature contemplated this problem when it determined that interest should run from the date the complaint was served. Nor do we think that the legislature would want to permit damages to bear interest from the date the complaint was served even though they were actually incurred some time after the service of the complaint. Accordingly, we conclude that interest should begin to accrue from the time damages actually occur if they are sustained after the complaint is served but before judgment, rather than from the date of serving the complaint or from the date of judgment. To carry interest, damages must be sustained and specifically quantified. Thus, interest should be awarded on damages suffered after serving the complaint but prior to judgment once the time when incurred and the amount of these damages have been proven by a preponderance of the evidence.

792 P.2d at 390.

Applying this interpretation to the facts before it, the Court further stated:

> In this case, damages of $217,529 were incurred between October 1984 and October 1985. No breakdown was made as to what damages were sustained prior to or after service of the complaint, nor was any breakdown of these damages made on a month-to-month basis. Therefore, Gray Line was entitled to interest on this loss from the date the loss ended, November 1, 1985, until satisfied, and not from the service of the complaint in January 1985. If Gray Line had specifically proven its damages in smaller increments, such as month-to month, it would have been entitled to interest accruing beginning at the end of each month in which the damage was sustained.

*Id.*

*See also Gibellini v. Klindt*, 110 Nev. 1201, 885 P.2d 540, 545 (1994) ("If a party is unable to prove when costs were incurred, interest on those costs should be awarded only from the time of judgment); *Hornwood v. Smith's Food King No. 1*, 107 Nev. 80, 807 P.2d 208, 214 (1991) ("Prejudgment interest on a damage award is only allowed where the damage award is known or ascertainable at a time prior to entry of judgment.").

Although it is probable that a substantial portion of the royalties awarded by the jury accrued well before September 30, 2012, Plaintiffs did not present any evidence as to when specific royalties accrued. Therefore, prejudgment interest cannot be awarded to Plaintiffs for any period prior to that date under NRS § 17.130.2. Plaintiffs are entitled to recover prejudgment interest on the damages award for breach of contract from September 30, 2012 through the date of judgment at the interest rate provided in the Agreement.

Prior to the end of the preceding trial, the parties stipulated to a $19,000.00 judgment in favor of the Defendant Hansen on his counterclaim against Plaintiff Liguori. Mr. Hansen's counterclaim related to amounts he paid to Mr. Liguori for the creation of certain statues that Plaintiff never produced or delivered; and for rent that Mr. Liguori owed relating to his sale of jewelry in Mr. Hansen's store. *Amended Counterclaim (ECF No.* 59). These claims did not arise out of the Retail Licensing Agreement. Although Mr. Hansen asserted them as permissive counterclaims in this action, they could have been pursued in a separate action. The Court agrees with Plaintiffs that Defendant's $19,000.00 judgment on his counterclaim should not be offset against the damages recovered by Plaintiffs for the breach of contract and copyright infringement prior to the calculation of prejudgment interest on those damages. The decision in *Barbara Ann Hollier Trust v. Shack*, 131 Nev.Adv.Op. 59, 356 P.3d 1085,

1092 (2015) does not require such an offset. Unlike this case, the counterclaim in that case arose out of the same transaction upon which the plaintiff obtained recovery.

Finally, the Court agrees with Plaintiffs that prejudgment interest should be awarded on Plaintiffs' judgment for copyright infringement. The jury found that Defendant willfully infringed Plaintiff's copyright and awarded $130,000 in statutory damages. As stated in *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700, 718 (9th Cir. 2004) (citing *McRoberts Software, Inc. v. Media 100, Inc.*, 329 F.3d 557, 572-73 (7th Cir. 2003), "prejudgment interest is, as general matter, routinely available for willful violations of federal law." Although Defendant argues that he acted in good faith, the jury reached the contrary conclusion. An award of prejudgment interest is therefore appropriate.

## CONCLUSION

The Court will award interest on the judgment for breach of contract from September 30, 2012 at the rate of 1 1/2 percent per month, or 18 percent per annum, simple interest through the date of judgment. The Court will also award prejudgment interest on the judgment for copyright infringement at the federal statutory rate. The Court will not offset the amount of Defendant's stipulated judgment on its counterclaim prior to calculating prejudgment interest on the judgment in Plaintiffs' favor. There still remain a couple of issues regarding entry of the judgment which the Court wishes to discuss with counsel. The Court will set a further status hearing on this matter as soon as is convenient to counsel and the Court. Counsel may appear by telephone if they desire.

**IT IS SO ORDERED.**

DATED this 4th day of August, 2016.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge