UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| LENARD E. SCHWARTZER, CHAPTER 7 BANKRUPTCY TRUSTEE, et al.,<br><br>　　　　　　　　　　Plaintiffs,<br>v.<br>BERT HANSEN, et al.,<br><br>　　　　　　　　　　Defendants. | Case No.: 2:11-cv-00492-GWF<br><br>**ORDER**<br><br>**Re: Motion for Attorneys' Fees (ECF NO. 393)** |

This matter is again before the Court on Plaintiffs' Motion for Attorneys' Fees and Nontaxable Costs (ECF No. 393) pursuant to the Court of Appeals' memorandum order reversing the previous award of attorneys' fees to Plaintiffs.

**BACKGROUND**

The facts of this case are more fully set forth in Order (ECF No. 417) and will not be repeated here except as necessary. Plaintiffs Steve Liguori and Bruno Liguori Turquoise Trading, Inc (hereinafter "Mr. Liguori")[1] commenced this action against Defendant Bert Hansen on April 1, 2011. Steve Liguori is an artist and sculptor. Mr. Hansen operated a café at Hoover Dam, Nevada. Mr. Liguori asserted essentially two claims against Mr. Hansen---breach of contract and copyright infringement.

. . .

---

[1] Mr. Liguori filed bankruptcy after the final judgment and it is now an asset of his bankruptcy estate. The Trustee has authorized Plaintiffs' counsel to continue the pursuit of an award of attorneys' fees in this matter.

1

In his breach of contract claim, Mr. Liguori sought recovery of unpaid royalties due to him under a Retail Licensing Agreement that authorized Mr. Hansen to sell souvenirs based on Mr. Liguori's artwork. The artwork included sculptures of a Hoover Dam construction worker known as the "High Scaler." Mr. Liguori created two sculptures of the "High Scaler." The first was a small sculpture. The second was a monument statue constructed pursuant to a written contract with Mr. Hansen. Mr. Liguori also made a drawing of the "High Scaler" which he provided to Mr. Hansen. Mr. Liguori obtained registered copyrights on all three images of the "High Scaler." The Retail Licensing Agreement reserved to Mr. Liguori his intellectual property rights in the artwork, except for Mr. Hansen's license to sell souvenirs at Hoover Dam.

Mr. Liguori's claim for copyright infringement arose primarily from Mr. Hansen's use of the High Scaler drawing in his business operations. Mr. Hansen renamed his business the "High Scaler Cafe," and used the High Scaler drawing image on labels placed on water bottles and food containers, receipts, menus, employee shirts, and business cards. The image was also placed on the glass door of the café. Mr. Liguori contended that he expected Mr. Hansen to pay him for the use of High Scaler drawing. Mr. Hansen contended that Mr. Liguori gave the drawing to him as a gift.

During the first trial in May 2015, Mr. Liguori argued that Mr. Hansen's use of the High Scaler image throughout his business operations entitled Mr. Liguori to a 17% royalty on the gross sales of the business which consisted primarily of the sale of food and bottled water. He asked the jury to award him $3,492,922.63 in damages for breach of contract. In the alternative, he asked to jury to award him $140,000 for unpaid royalties on the sale of souvenirs, and $150,000.00 in statutory damages for Mr. Hansen' willful copyright infringement. The jury awarded Mr. Liguori $1,200,000.00 on his breach of contract claim and $150,000.00 for copyright infringement---the maximum amount permitted by statute. The Court thereafter granted Mr. Hansen's motion for new trial on the grounds that the sale of food and bottled water or other non-souvenir items did not fall within the scope of the Retail Licensing Agreement. The Court also held that the award of $150,000 for copyright infringement was inconsistent with the jury's award of substantial damages for breach of contract.

1 | During the second trial in June 2016, Mr. Liguori was permitted to pursue his breach of contract claim for unpaid royalties on the sale of souvenir items, including the sale of a book about Hoover Dam that displayed the High Scaler drawing on its back cover. He was precluded, however, from asserting a breach of contract claim predicated on the theory that all items sold in Mr. Hansen's café were within the scope of the Retail Licensing Agreement. Mr. Liguori was allowed to pursue his claim for willful copyright infringement based on Mr. Hansen's unauthorized use of the copyrighted image of the High Scaler drawing. The jury awarded Mr. Liguori $47,817.36 for breach of contract, and $130,000 in statutory damages for willful copyright infringement.

After judgment was entered, Plaintiffs filed a motion for an award of $970,882.50 in attorneys' fees and $66,0164.89 in nontaxable costs. *Motion for Attorneys' Fees and Nontaxable Costs* (ECF No. 402). On February 15, 2017, the Court granted Plaintiffs' motion for attorneys' fees, in part, but held that Plaintiffs were not entitled to recover attorneys' fees for the first trial. *Order* (ECF No. 417). It therefore reduced the award of attorneys' fees by $349,844.00. *Id.*, at 21. Plaintiffs appealed that portion of the order. The Court of Appeals held that the Court abused its discretion in denying Plaintiffs' attorneys' fees related to the first trial. It therefore remanded the case for further consideration of Liguori's fee award. The Court of Appeals stated that "[t]he district court retains its discretion to reduce fees if it believes a reduction is warranted for other reasons." *Memorandum of USCA* (ECF No. 523, September 27, 2018) at 8-10.

The Court held a status hearing on December 4, 2018 to determine if the parties wished to file supplemental briefs regarding the motion of attorneys' fees. Defendant requested permission to file a supplement brief which the Court granted. It ordered Defendant to file his supplemental brief by January 4, 2019 and gave Plaintiffs until January 19, 2019 to file their reply brief. Defendant did not file a supplemental brief. The Court therefore stated that Plaintiffs were not required to file a brief and that the Court will decide the matter in accordance with the Court of Appeal's decision. *Order* (ECF No. 530).

. . .

. . .

**DISCUSSION**

The Ninth Circuit requires a district court to calculate an award of attorneys' fees by first calculating the "lodestar." *Caudle v. Bristow Optical Co., Inc.*, 224 F.3d 1014, 1028 (9th Cir. 2000) (citing *Morales v. City of San Rafael,* 96 F.3d 359, 363 (9th Cir.1996)). "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate," *id.,* and it presumably incorporates consideration of the results obtained by the prevailing litigant, as required by *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), as well as a number of other relevant considerations, *see Morales,* 96 F.3d at 363 n. 8. After computing the lodestar, the district court should assess whether additional considerations that this court has enumerated, *see Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 70 (9th Cir.1975), require the district court to adjust the figure, *see Morales,* 96 F.3d at 363–64." *Id.*

In *Hensley v. Eckerhart*, the Supreme Court stated that the starting point for determining a reasonable attorneys' fee is the number of hours reasonably expended on the case multiplied by a reasonable hourly rate for the attorneys. This calculation provides an objective basis upon which to make an initial estimate of the value of a lawyer's services. *Id.*, 461 U.S. at 433-34, 103 S.Ct. at 1939-40. The Court further stated:

> The product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the "results obtained." This factor is particularly crucial where a plaintiff is deemed "prevailing" even though he succeeded on only some of his claims for relief. In this situation two questions must be addressed. First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?

*Id.*, 461 U.S. at 434, 103 S.Ct. at 1940.

Where a plaintiff presents distinctly different claims for relief based on different facts and legal theories, he is not entitled to an award of attorneys' fees on the claims on which he did not prevail. Those claims should be treated as if they had been raised in a separate lawsuit in which

1 plaintiff did not prevail. *Id.*, 461 U.S. at 434-35, 103 S.Ct. at 1940. "In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.*, 461 U.S. at 435, 103 S.Ct. at 1940.

The attorneys' fees should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants may, in good faith, raise alternative grounds for a desired outcome. The court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. "If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill. Again, the most critical factor is the degree of success obtained." *Id.*, 461 U.S. at 436, 103 S.Ct. at 1941. There is no precise rule or formula for determining a reasonable fee in this circumstance. The district court may attempt to identify specific hours that should be eliminated, or, in the exercise of reasonable discretion, simply reduce the award to account for the limited success. *Id.*

In *Blum v. Stenson*, 465 U.S. 886, 898-900, 104 S.Ct. 1541, 1549-50 (1984), the Court modified *Hensley* by stating that "[b]ecause acknowledgment of the 'results obtained' generally will be subsumed within other factors used to calculate a reasonable fee, it normally should not provide an independent basis for increasing the fee award." In *Wood v. Sunn*, 865 F.2d 982, 991 (9th Cir. 1988), the Ninth Circuit noted that many of the factors previously identified by courts as probative on the issue of reasonableness of a fee award are now subsumed within the initial calculation of the lodestar amount. *Cunningham v. County of Los Angeles*, 879 F.2d 473, 488 (9th Cir. 1988) states in this regard:

> [I]n ordinary cases, a plaintiff's "degree of success" or the "results obtained" should be adequately accounted for in the lodestar. Only in rare or exceptional cases will an attorney's *reasonable* expenditure of time on a case not be commensurate with the fees to which he is entitled. Adjustments to the lodestar based on "results obtained" must be supported by evidence in the record demonstrating why such a deviation from the lodestar is appropriate. *See Blum,* 465 U.S. at 900, 104 S.Ct. at 1549. In the case at bar, neither the record before us nor the district court's order shows why the downward adjustment "was necessary to provide fair and reasonable compensation." *Id.* at 901, 104 S.Ct. at 1550. This deviation from the lodestar, therefore, cannot stand.

Plaintiffs argued that the Court was not required to apportion the attorneys' fees between the breach of contract and copyright infringement claims because they were so intertwined as to make apportionment both impossible and unnecessary. *Motion for Attorneys' Fees* (ECF No. 393) at 11-12 (citing *Unicom Systems, Inc. v. Farmers Group, Inc.*, 405 Fed.Appx. 152, 155 (9th Cir. Dec. 2, 2010), *GCM Air Group, LLC v. Chevron U.S.A., Inc.*, Case No. 3:07-cv-168-RCJ-WGC, Order (ECF No. 105) (D.Nev. June 24, 2009); and *Home Gambling Network, Inc. v. Piche*, Case No. 2:05-cv-610-DAE-VCF, Order (ECF No. 407) (D.Nev. April 16, 2015)). Plaintiffs made no attempt to separate the attorneys' fees incurred on the breach of contract claim from those incurred on the copyright infringement claim.

The overwhelming majority of attorneys' fees are requested on behalf of the law firm of Hutchinson & Steffen. Between September 26, 2011 and August 16, 2016, nineteen (19) lawyers and paralegals worked on the case. The principal lawyers in order of hours worked, but not level of seniority, were Ava Bessell (1,353.80 hours), Jacob Reynolds (496.10 hours), Rik Wade (438.00 hours), Kumen Taylor (282.60 hours), and Todd Moody (193.50 hours). *Memorandum of Fees and Costs* (ECF No. 394), *Exhibit 8, Hutchison & Steffen Attorney's Fees* (hereinafter "*Hutchison & Steffen Billing Records*"). A review of Hutchinson & Steffen's 135 page itemized billing statement demonstrates that an intelligible apportionment of the legal services provided on the breach of contract and the copyright infringement claims cannot be made.

Plaintiffs elected to seek statutory damages for copyright infringement, rather than attempt to prove actual damages. They obtained a substantial degree of success in the second trial on their claim for copyright infringement based on Mr. Hansen's unauthorized use of the

6

High Scaler drawing image to "brand" his business. The jury's award of $130,000 in statutory damages was only $20,000 less than the maximum allowed by the statute.[2]

Plaintiffs also prevailed on their breach of contract claim under the Retail Licensing Agreement, but to a far lesser extent than they sought. Prior to the first trial, Mr. Liguori alleged that the cost of creating and installing the High Scaler monument statue was approximately $500,000. He claimed that Mr. Hansen and Mr. Poe suggested that instead of an initial contract price of $600,000 to create the monument statue, that Mr. Liguori agree to construct it for $166,000 and that he would be able to recoup the full value of the monument statue through the sale of souvenirs.[3] The Court refused to permit Plaintiffs to pursue this theory because neither the monument contract or the Retail Licensing Agreement, both of which were fully integrated documents, made any reference to such an agreement or understanding.

During the first trial, Plaintiffs changed their theory of liability to argue that the entire gross sales of Mr. Hansen's business were within the scope of the Retail Licensing Agreement. The amount of the verdict showed that the jury accepted this theory, at least in part. Based on the provisions of the Retail Licensing Agreement and common sense, however, the verdict could not stand and the Court therefore granted a new trial. Plaintiffs did not appeal the order granting a new trial even though they recovered substantially lower damages in the second trial.

During final argument in the second trial, Plaintiffs' counsel requested that the jury award $78,617.00 for breach of contract damages. This figure was based on Plaintiffs' expert witness's estimate of the unpaid royalties on items that were indisputably souvenirs, which totaled $32,417.54; and $46,199.46 for the sale of the "The Story of Hoover Dam." *Reporter's Transcript of Proceedings* (ECF No. 446), at 72-74. The jury awarded Plaintiffs $47,817.36 for breach of contract. Plaintiffs thus obtained a total jury verdict of $177,817.36. The Court

---

[2] Plaintiffs attempted to assert a copyright infringement claim based on Defendant's unauthorized sale of souvenirs at locations other than Hoover Dam. Plaintiffs, however failed to present any evidence that Defendant was responsible for such sales and that infringement claim was not presented to the jury.

[3] If this theory had been allowed, Plaintiffs also apparently intended to argue that Defendant had a duty to support and promote the sale of licensed souvenirs so that Mr. Liguori could reach his goal of recouping his costs and a reasonable profit on the construction of the monument statue.

awarded Plaintiffs an additional $36,947.32 in prejudgment interest, resulting in a final judgment of $214,764.68. *See Judgment* (ECF No. 391). The $970,882.50 in attorney's fees requested by Plaintiffs is approximately 4.52 times greater than the judgment they obtained.

In determining the amount of a reasonable attorneys' fee award, the court may also consider the settlement negotiations between the parties. *Ingram v. Oroudjian*, 647 F.3d 925, 927 (9th Cir. 2011); *Gurule v. Land Guardian, Inc.*, 912 F.3d 252 (5th Cir. 2018). The parties in this case attended a mandatory settlement conference on August 1, 2014. The Court, however, has not been provided with any information regarding settlement offers exchanged between the parties at any time prior to the jury verdict and judgment following the second trial. The Court, therefore, has no knowledge whether Plaintiffs or Defendant made reasonable offers of settlement that should be considered in determining a reasonable attorneys' fee award.

In its previous order, the Court reduced Plaintiff's $970,088.50 attorneys' fee request by 10 percent based on *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) which stated that the district court may impose a small reduction, no greater than 10 percent, based on unnecessary or duplicative billing, without a more specific explanation in support of the reduction. *Moreno* also noted that determining whether legal work is unnecessarily duplicative is no easy task. "When a case goes on for many years, a lot of legal work will grow stale; a competent lawyer won't rely entirely on last year's or even last month's research: Cases are decided; statutes are enacted; regulations are promulgated and amended. A lawyer also needs to get up to speed on research previously performed. All this is duplication, of course, but it's *necessary* duplication; it is inherent in the process of litigating over time." *Id.* at 1112.

The Plaintiffs' attorneys handling this litigation changed over time. Attorney Jacob Reynolds performed substantial work on this case from the time it was taken over by Hutchison & Steffen in September 2011 until shortly before it went to trial in May 2015. According to the billing entries, Mr. Reynolds and Attorney Ava Bessell were the principal attorneys working on the case during that period. *Hutchison & Steffen Billing Records*, at 2-60. Mr. Reynolds performed 496.10 hours of work. He stopped working on the case shortly before the first trial, but still remained with Hutchison & Steffen. His lack of involvement thereafter has not been

explained. Ms. Bessell billed 47 percent of the total legal time on the case. *Id.* at 136. According to the Declaration of Todd L. Moody, Ms. Bessell obtained her law degree in 2012 and was admitted to the Nevada bar shortly thereafter. *Declaration of Todd L. Moody* (ECF No. 393-1), at ¶ 17. She actually started working on this case in August 2012 before she was admitted to the Nevada bar. It also appears that her time during that period was billed at the rate of $180 hour which was substantially in excess of the hourly rate that Hutchison & Steffen charged for law clerks or paralegals. *Id.* at ¶ 13.

It is not per se unreasonable to have a new and inexperienced lawyer perform substantial legal work on a case. To the extent that the work involves less complicated tasks such as reviewing and summarizing documents, preparing discovery requests, and conducting legal research, it benefits a fee-paying client to have the work performed by a competent attorney who bills at a significantly lower rate. Ms. Bessell's hourly rate of $285, however, was not significantly lower than that of Mr. Reynolds or other more experienced associate attorneys who worked on the case. An inexperienced attorney is also likely to spend more time in performing unfamiliar legal tasks than will an experienced lawyer. The inexperienced lawyer must therefore be properly supervised to ensure that the legal work performed is properly focused and limited. Given the amount of time that Ms. Bessell billed on this case, it is not clear that she was adequately supervised. She spent substantial time researching legal issues which may be appropriate, but which also lends itself to unnecessary and unproductive time spent on the case. When the lawyer represents the client on a contingent fee basis and the client does not have to pay the attorney's fees as they are incurred, there is a legitimate concern that the billing records do not accurately reflect the legal work actually performed. For all these reasons, the Court believes that the initial 10 percent reduction of the claimed attorney and paralegal hours is justified to account for duplicative and unnecessary billing.

An additional reduction of 15 percent in Hutchison & Steffen's billed hours is justified based on the results obtained. As discussed above, prior to the first trial, Mr. Liguori pursued a theory of recovery based on recouping his costs and profit for building the monument statue. The Court barred Plaintiffs from pursuing that theory. It is not clear when Plaintiffs decided to

9

pursue their alternative theory that they were entitled to a royalty on the gross sales of Mr. Hansen's business. This theory did not become apparent to the Court, at least, until Plaintiffs' counsel asked the jury to award nearly $4 million for breach of contract damages. The verdict based on this argument could not stand, however, and necessitated a new trial.

At the second trial, Plaintiffs asked for $78,617.00 in breach of contract damages and received a verdict for $47,817.36. These amounts were much more in line with the reasonable value of that claim. The facts and circumstances did not reasonably require Plaintiffs' counsel to expend the number of hours they did to prove Defendant's liability for $78,617.00 or $47,817.36 in unpaid royalties on the sales of souvenirs. While Defendant did not keep accurate records regarding his sales of souvenirs, Plaintiffs were able to establish the amount of unpaid royalties through the work and analysis of their expert witness. Defendant's use of the High Scaler drawing to brand his store was practically self-evident and easily proven. Plaintiffs elected to seek statutory damages on their copyright infringement claim which did not require them to undertake the complicated task of trying to prove actual damages.

The Court will therefore impose a total reduction of 25 percent in the hours billed by Hutchison & Steffen. Because the Hutchison & Steffen lawyers, law clerks and paralegals billed at different hourly rates, the Court has reduced each person's hours by 25 percent and then multiplied the reduced hours by that person's hourly rate. See *Attachment 1* to this Order.[4] This results in an award of total attorney's fees to Hutchison & Steffen of $ 706,557.04. The Court will not reduce the fees sought on behalf of the attorneys who represented Plaintiffs prior to Hutchison & Steffen as there is no evidence that their bills were excessive. Given their limited involvement early in the case, it is not be appropriate to reduce their hours based on the result obtained. After deducting the amount that Plaintiffs allocated to pursuing their separate claims against Defendant Kawana Poe, this results in an additional award of attorneys' fees of $15,983.50.

---

[4] The hourly rate billed for Ms. Bessell's work in August and September 2012 will also be reduced to the hourly rate for law clerks and paralegals.

In its prior order the Court reduced Plaintiffs' request for non-taxable costs by $12,445.82 for the costs relating to the first trial. Based on the Court of Appeals' decision, this reduction was incorrect. The Court will not impose a percentage reduction in Plaintiff's costs based on the results obtained since the appropriate reduction is accomplished by reducing the attorneys' fees award. Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Attorneys' Fees and Nontaxable Costs (ECF No. 393) is **granted** as follows:

1. Plaintiffs are awarded attorneys' fees in the amount of $722,540.54.

2. Plaintiffs are award non-taxable costs in the amount of $66,0164.89.

DATED this 8th day of February, 2019.

_____
**GEORGE FOLEY, JR.**
**UNITED STATES MAGISTRATE JUDGE**

ATTACHMENT 1

| Attorney | Hourly Rate | Original Hours Billed | Original Amount Billed | Hours Reduced by 25% | New Attorney's Fees Amount |
|---|---|---|---|---|---|
| AMB | $285.00 | 1286.3 | $385,832.00 | 964.725 | $274,946.63 |
| AMB** | $95.00 | 67.5 | $0.00 | 50.625 | $4,809.38 |
| BBJ | $95.00 | 52.3 | $4,968.50 | 39.225 | $3,726.38 |
| BJT | $290.00 | 19.6 | $5,684.00 | 14.7 | $4,263.00 |
| JAR | $315.00 | 496.1 | $156,271.50 | 372.075 | $117,203.63 |
| JIS | $290.00 | 1.3 | $377.00 | 0.975 | $282.75 |
| JRG | $450.00 | 0.3 | $135.00 | 0.225 | $101.25 |
| KCD | $95.00 | 42.8 | $4,066.00 | 32.1 | $3,049.50 |
| KDK | $95.00 | 84.7 | $8,046.50 | 63.5325 | $6,035.59 |
| KLT | $400.00 | 282.6 | $113,040 | 211.95 | $84,780.00 |
| MF | $95.00 | 5 | $475.00 | 3.75 | $356.25 |
| MSR | $270.00 | 3.7 | $999 | 2.775 | $749.25 |
| RAF | $95.00 | 36.6 | $3,477 | 27.45 | $2,607.75 |
| RKB | $124.47 | 213 | $26,512.50 | 159.75 | $19,884.08 |
| RLW | $290.00 | 438 | $127,020.00 | 328.5 | $95,265.00 |
| RTS | $290.00 | 13.9 | $4,031.00 | 10.425 | $3,023.25 |
| SAD | $95.00 | 186.5 | $17,717.50 | 139.875 | $13,288.13 |
| SLB | $98.52 | 46.4 | $4,571.50 | 34.8 | $3,428.50 |
| TLM | $399.59 | 193.5 | $77,320.00 | 145.125 | $57,990.50 |
| TWP | $290.00 | 49.5 | $14,355.00 | 37.125 | $10,766.25 |
| **TOTAL** | | **3519.6** | **$954,899.00** | **2639.7075** | **$706,557.04** |

** From August 27, 2012 to September 30, 2012, AMB's fees were reduced in accordance with the reasonable hourly rate for a paralegal or law clerk who is not licensed to practice. AMB was licensed in October 2012. Thus, the Court will accept the billable hourly rate for AMB as an attorney from October 1, 2012 forward.